**TXI OPERATIONS, L.P., Petitioner,**

v.

**David PERRY, Respondent.**

No. 05–0030.

Supreme Court of Texas.

Argued Jan. 26, 2006.

Decided Feb. 27, 2009.

Zeb D. Zbranek, Zbranek Firm, P.C., Liberty, for Petitioner.

Brett S. Thomas and Jeffrey T. Roebuck, Roebuck & Thomas, PLCC, Marc P. Henry, Henry & Fuller, Beaumont, for Respondent.

Justice GREEN delivered the opinion of the Court, in which Chief Justice JEFFERSON, Justice O'NEILL, Justice WAINWRIGHT, Justice BRISTER, and Justice JOHNSON joined.

Rural unpaved roads with potholes at the cattle guards are quite common in this state. In this case, an invitee truck driver drove through one of those potholes several times, claiming injury on one of his last trips, and sued the landowner for its failure to adequately warn of the danger. The premises owner does not challenge whether it had a duty to warn,[1] but claims instead that a fifteen miles-per-hour speed limit sign posted near the pothole was an adequate warning as a matter of law. We conclude that it was not. Accordingly, we affirm the judgment of the court of appeals.

## I

TXI Operations, LP, owns and operates the Dolen Sand Pit and is responsible for maintaining an unpaved road that connects the pit to the highway. David Perry, a truck driver for Campbell Ready Mix, regularly drove back and forth on the road to load and transport materials in connection with his duties for Campbell. On one trip down the road, his vehicle struck a hole at a cattle guard. As a result, he was thrown into the roof of the truck's cab and injured. Perry had already driven the road at least four times that day without injury, and admitted he knew the hole was there. He was also aware of a fifteen miles-per-hour speed limit sign that TXI had posted near the hole. Perry nevertheless claimed that TXI was negligent in failing to warn him of the existence of a road condition that it knew was dangerous.

A jury found that Perry and TXI were both negligent and equally at fault. As a result, the trial court entered a judgment for Perry, reducing the jury's damage award by his percentage of fault. TXI appealed, claiming that posting the speed limit sign discharged its duty to warn Perry of the dangerous road condition. The court of appeals disagreed and affirmed the trial court's judgment. —— S.W.3d ——, 2004 WL 2610451. In this Court, TXI does not contest that it owed a duty to warn its invitees; it asserts only that the speed limit sign was an adequate warning of the dangerous road condition as a matter of law.[2]

## II

Premises owners and occupiers owe a duty to keep their premises safe for invitees against known conditions that pose unreasonable risks of harm. *See, e.g., CMH Homes, Inc. v. Daenen*, 15 S.W.3d 97, 99 (Tex.2000). The duty is to "take whatever action is reasonably prudent un-

---

1. TXI does not argue that the pothole did not constitute an unreasonably dangerous premises condition, or that the condition was open and obvious. *See Gen. Elec. Co. v. Moritz*, 257 S.W.3d 211, 216 (Tex.2008). Accordingly, for purposes of this opinion, we will assume there was a duty to warn.

2. TXI presents the following single issue:
 Is a 15 mile per hour speed limit sign adequate warning when the evidence is Perry saw the speed limit sign, heeded the warning to slow down, saw and appreciated the danger of the condition in which he was injured by crossing the condition four times prior to sustaining an injury on the fifth crossing?
 According to TXI, "submission of the issue of negligence (and any attendant damages) was error" because "TXI discharged its duty as a matter of law by posting a 15 mile per hour speed limit sign."

der the circumstances to reduce or to eliminate the unreasonable risk from that condition." *Corbin v. Safeway Stores, Inc.,* 648 S.W.2d 292, 295 (Tex.1983). The existence of this duty is a question of law for the court. *Moritz,* 257 S.W.3d at 217. When such a duty is owed, the premises owner or occupier must either adequately warn of the dangerous condition or make the condition reasonably safe. *See State v. Williams,* 940 S.W.2d 583, 584 (Tex.1996) (per curiam). On appeal, it is undisputed that Perry was an invitee on TXI's premises, that TXI knew about the hole in the road, that the hole constituted a dangerous condition, and that TXI did not attempt to repair the hole. Perry also admits that he knew about the hole and had encountered it several times before his injury. But TXI does not attempt to argue that it owed no duty of care because of Perry's voluntary conduct or because the hole was obvious. Rather, TXI argues that its duty to Perry was discharged when it posted the speed limit sign.

 In a premises liability case such as this, the defendant's negligence is determined by asking whether the defendant "exercise[d] reasonable care to reduce or to eliminate the risk" created by the premises defect. *Corbin,* 648 S.W.2d at 296; *see also Parker v. Highland Park, Inc.,* 565 S.W.2d 512, 521 (Tex.1978). Negligence is commonly a question of fact unless the evidence establishes a complete absence of negligence as a matter of law. Here, it does not. A "be careful" warning might be *some* evidence that the premises owner was not negligent, but it is not conclusive in a situation such as this where the posted speed-limit sign was only a general instruction; it neither informed the driver of road hazards generally, nor did it identify the particular hazard that TXI now says the sign was meant to warn against. *See State v. McBride,* 601 S.W.2d 552, 554,

556–57 (Tex.Civ.App.-Waco 1980, writ ref'd n.r.e.) (holding that an owner had not satisfied the duty to warn drivers of a slick and muddy road with a " 'SLOW' sign and a '35 MPH' sign"). The inadequacy of the sign is supported by the evidence that Perry was following the sign's instruction at the time of his injury. Of course, an alternative to providing an adequate warning would have been for TXI to repair the pothole so as to make the condition reasonably safe as a matter of law. *See Williams,* 940 S.W.2d at 584. But the record does not reflect that TXI took this action.

The dissent takes issue with the notion that potholes in rural roads pose an unreasonable risk of harm to 18–wheel truck drivers because potholes are common, they are open and obvious, and no warning about them should even be necessary. But even the dissent concedes, as it must, that the duty issue is not before us. That being so, of course, we do not decide it. Instead, we must assume that a duty to warn exists. The dissent's view seems to be that because it concludes no warning should really be necessary, any warning is adequate. That view, of course, completely discounts the existence of duty. If a duty is owed, an adequate warning is required. We agree with the dissent that a speed limit sign does not necessarily mean the driver should expect the posted limit to be a safe speed under all circumstances. Regardless, the record reflects some evidence that the warning here was not adequate to warn of the pothole and that the pothole presented a risk even at a speed slower than the posted limit. As a result, the jury could have properly concluded that TXI's sign did not adequately warn Perry of the dangerous condition.

The judgment of the court of appeals is affirmed.

Justice HECHT filed a dissenting opinion, in which Justice MEDINA and Justice WILLETT joined.

Justice HECHT, joined by Justice MEDINA and Justice WILLETT, dissenting.

The morning was clear and hot, the sun brightly shining, as the 18–wheeler sand-and-gravel truck lumbered along the rough dirt road from the main highway over to the Dolen sand pit. Behind the wheel sat David Perry, 36. For seven years, he had been driving rigs for Campbell Concrete & Materials, L.P. That day, his job was hauling sand from the Dolen pit to Campbell's ready-mix concrete plant about an hour away.

TXI Operations, L.P. owned the Dolen sand pit and maintained the three-mile dirt road that ran from the highway through the woods to the facility. Trucks would enter the sand pit, load, weigh at the scale house, and then leave the way they came in. The road was wide enough for trucks to pass each other coming and going. Eight to twelve thousand trucks a year went in and out. The day Perry was injured, seventy trucks crossed the scales, thirty-seven of them driven by twelve Campbell truckers, three by Perry himself.

The heavy 18–wheelers—each weighed some 30,000 pounds empty and 80,000 pounds loaded—were hard on the road, especially when it was wet. The road was rough as a scrub board and filled with potholes. TXI graded the road regularly, though not frequently enough to suit the drivers, who often complained about how bumpy it was, to little avail. TXI encouraged truckers to slow down, especially on blind curves, posting speed limit signs from 15 mph to 25 mph along the road.

Jeff Casey, a Campbell driver, testified: "We ran that road so much that we kind of knew where the [rough] areas were, but right there at the cattle guard, it was always a little bit worse right there." The cattle guard to which he referred was toward the end of the road, not far from the sand pit and scale house. The road up to the cattle guard ran straight for half a mile or so. The cattle guard was only one truck wide and plainly visible. Stretched indolently in front of the cattle guard, as one entered the plant, lay a large pothole. The day of Perry's accident, the pothole was nine inches deep (other days it was deeper) and wide enough that a truck could not avoid it and still get through the cattle guard. TXI's posted speed limit there was 15 mph, although a trucker could not drive an empty truck even 10 mph through the pothole without being bounced around the cab and risking injury. But in fact, no one was injured, ever. Scores of truckers crossed the cattle guard thousands of times without injury, except for one fateful day in May.

Perry first crossed the cattle guard in his empty truck a little before 10:30 a.m. He was running with Casey, who was driving the truck right ahead of him. The two trucks loaded, weighed, and left, crossing the cattle guard on their way out. About two hours later they returned with Casey again in the lead, crossing the cattle guard as before, both on their way in and on their way out. At 3:00 p.m., they were back, this time with Perry in the lead. At the cattle guard, he hit the pothole going 10–15 mph and bounced the truck, jamming his head into the roof of the cab. He radioed back to Casey, who had seen Perry's truck bounce, telling him what had happened. The two continued on to the plant, loaded, weighed, and left without further incident.

Perry did not report his injury for several weeks. Three days before the two-

year statute of limitations would have run, he sued TXI for his injuries.[1]

Generally—with an exception I discuss below—a person who knows that a condition of his property poses an unreasonable risk of harm to invitees must use ordinary care to protect them from danger, either by adequately warning them or making the condition reasonably safe.[2] The Court holds that there is evidence in this case that TXI failed to discharge this duty to Perry. I respectfully disagree.

TXI does not challenge, so therefore I must assume, that potholes in dirt roads leading to sand pits present an unreasonable risk of harm to experienced 18–wheeler sand-and-gravel haulers. This, of course, is preposterous. Potholes pock the surface of the civilized world. If potholes—all but yawning chasms capable of suddenly swallowing up an entire vehicle—posed an unreasonable risk of harm to anyone, let alone experienced and reasonably careful drivers, whole swaths of civilization would have to be closed off to human traffic. Manhattan would be the first to shut down, but no city, town, or village would escape. Across the planet, ground transportation would be brought to a halt. Commerce would cease. The end could not be averted by posting adequate warnings. Signs at city limits—Warning! Potholes!—would hardly be adequate. Each pothole would require its own warning sign. Even if available resources could supply enough signs, warnings that unreasonable danger is everywhere provide no warning that it is anywhere in particular.

Potholes do pose a risk of harm, no question. But the risk is simply not an unreasonable one unless the pothole is one of those rare, menacing kinds that lure unsuspecting travelers into danger. The potholes that permeated the dirt road to the Dolen sand pit were all of the ordinary variety. As one Campbell driver testified, they were "all up and down the road". Nothing about the one at the cattle guard posed a significantly greater risk of harm than any of the others. To the contrary, because the pothole was usually there, and did not, in the words of one driver, "sneak[ ] up on you", as potholes are sometimes wont to do, drivers knew to be careful, and were careful, as they necessarily slowed to cross over the narrow cattle guard. Casey testified that the road was not dangerous: "whenever the road was bad," he said, "we all knew to slow it down". Another Campbell driver, asked why he did not consider the pothole at the cattle guard dangerous, stated:

> Why would I consider it not dangerous? I mean, it wasn't, it wasn't dangerous, no. It was not dangerous. It was a pothole; but if you hit it just right, yeah, it would jar you.

But as I say, TXI does not argue that the pothole did not pose an unreasonable risk of harm, so I turn to the argument TXI does make: that its warning, a 15 mph maximum speed limit sign, was adequate under the circumstances. The Court seems to think that a posted 15 mph speed limit means that a person can safely drive up to 15 mph no matter what. After Perry sued, TXI restaged the accident using the same truck Perry was driving the day he was injured. The test driver hit a pothole like the one Perry had described at 10 mph and hit his head in the cab. So

---

1. At trial, TXI contested whether Perry had been injured as he claimed, whether it occurred on the day he asserted, and whether there was a pothole near the cattle guard. Although the jury found TXI and Perry both negligent, I have summarized the evidence most favorable to Perry.

2. *State Dep't of Highways & Pub. Transp. v. Payne*, 838 S.W.2d 235, 237 (Tex.1992).

if the speed limit sign means what the Court seems to think it does, then there is some evidence to support the jury's finding that the warning was inadequate.

But that is not what a maximum speed limit sign means. Texas law provides that "[a] speed in excess of [legal limits] is prima facie evidence that the speed is not reasonable and prudent and that the speed is unlawful."[3] The inverse is not true: a speed below the legal limit is not, prima facie, reasonable and prudent. To the contrary, Texas law provides that, regardless of any maximum speed limit set by law, "[a]n operator ... may not drive a vehicle at a speed greater than is reasonable and prudent under the conditions and having regard for actual and potential hazards then existing".[4] Courts uniformly hold that a vehicle's speed may be excessive even though it is below the posted limit.[5] Perry could not argue that a 15 mph speed limit posted by public authorities licensed him to drive up to 15 mph regardless of

the circumstances, and there is no more basis for the argument simply because the speed limit was posted by TXI. Indeed, Casey, the Campbell driver Perry was running with, testified that the speed limit signs only told him "more or less just to be watchful". Perry testified that he thought a posted speed limit signaled that a slower speed was safe, but tellingly, he could not recall what the speed limit was at the cattle guard, and he did not testify that he looked over at the speed limit sign and thought to himself, "I can drive that fast safely, no matter what."

It was not feasible, of course, for TXI to post speed limits that were safe under all conditions because road conditions were constantly changing. When the road was graded, it was smoother. When it rained, the road surface was worse. The 40-ton trucks constantly lumbering over the road tore into its surface. A safe speed on a dry, flat road would not be safe on a rough, wet one, and no one could reason-

---

**3.** Tex Transp. Code § 545.352(a).

**4.** Id. § 545.351(b)(1).

**5.** See, e.g., Hokr v. Burgett, 489 S.W.2d 928, 930 (Tex.Civ.App.-Fort Worth 1973, no writ) ("Speed may be excessive even though it is below the posted speed limit. Although a motorist may not be exceeding the speed limit, he is under a duty to drive no faster than a person of ordinary prudence under the same or similar circumstances." (citations omitted)); Fitzgerald v. Russ Mitchell Constructors, Inc., 423 S.W.2d 189, 191 (Tex.Civ.App.-Houston [14th Dist.] 1968, writ ref'd n.r.e.) ("The fact that [appellant] was driving below the speed limit of a presumed 30 miles per hour ... does not relieve her of the common law duty to operate her vehicle at a speed at which an ordinarily prudent person would operate a vehicle under the same or similar circumstances."); Billingsley v. Southern Pac. Co., 400 S.W.2d 789, 794 (Tex.Civ.App.-Tyler 1966, writ ref'd n.r.e) ("Although a motorist may not be exceeding the 'legally posted speed limit,' nevertheless, he is under the duty to drive no faster than an ordinarily prudent person in the exercise of ordinary care would

drive under the same or similar circumstances. A speed may be held excessive under the circumstances although below the 'legally posted limit.' "); Seay v. Kana, 346 S.W.2d 384, 386 (Tex.Civ.App.-Houston 1961, no writ) ("Even if [appellant] were not exceeding it [the speed limit], he was under the duty not to drive faster than an ordinarily prudent person in the exercise of ordinary care would drive under the same or similar circumstances."); Vardilos v. Reid, 320 S.W.2d 419, 423 (Tex.Civ.App.-Houston 1959, no writ) ("The fact that [appellant] was driving below the speed limit of 30 miles per hour ... does not relieve him of the common law duty to operate his vehicle at a speed at which an ordinarily prudent person in the exercise of ordinary care would operate a vehicle under the same or similar circumstances."); Morrison v. Antwine, 51 S.W.2d 820, 821 (Tex. Civ.App.-Waco 1932, no writ) ("A person may be guilty of negligence or contributory negligence in operating his car at an excessive rate of speed even though ... the maximum limit as fixed by the statute is not exceeded....").

ably expect truckers to drive as slowly on good stretches of road as they had to on bad stretches. As a practical matter, the warnings TXI gave were the only ones it could give: slow down to a speed that allows actual road conditions to be assessed.

Moreover, TXI's speed signs actually worked. Truckers drove through the potholes without incident. Had Perry driven up to the cattle guard the first time, noted the 15 mph speed limit sign, thought to himself that the sign assured a safe speed, driven through the pothole, and been injured, he could at least argue that the sign misled him. But that is not, according to him, what happened. Perry, like all the other truckers on the road to the Dolen sand pit, slowed to where the bumps could be navigated safely. Nor is there evidence that any driver ever drove the road thinking, contrary to law and reason, that the posted speed was safe, regardless of the circumstances. In all of the thousands of times truckers crossed the cattle guard, there is no evidence of a single injury, except Perry's. And Perry himself crossed the cattle guard four times in five hours without incident the same day he was injured.

The Court concludes that reasonable minds can disagree about whether TXI's speed limit gave adequate warning of the dangers of the cattle guard pothole when there was one accident in thousands of crossings. What warning could no reasonable person think inadequate? Here, the Court is a little vague. A "be careful" warning will not do, the Court says, because it is too general.[6] The speed limit sign was inadequate, according to the Court, even though it did not "necessarily mean the driver should expect the posted limit to be a safe speed under all circumstances",[7] because it did not "identify the particular hazard"[8] For goodness' sake, the "particular hazard" was a plain old *pothole*, not a cliff overhanging the ocean. So should warning signs be site-specific, one per pothole? Maybe something like:

Scores, maybe hundreds, would have been required on this one short road alone. This probably would not satisfy the Court:

6. *Ante* at 765.

7. *Ante* at 765.

8. *Ante* at 765.

**Editor's Note:** The preceding image contains the reference for footnote [9].

Since "[r]ural unpaved roads with potholes at cattle guards are quite common in this state",[10] as the Court acknowledges, one cannot help but wonder why any warning at all is required. But if warnings must be given, owners should be told straight out what is adequate, so they can ensure safety and avoid liability. On this rather important subject the Court offers nothing helpful. I guess we'll know an adequate warning when we see it.

If TXI was required to warn of rough conditions on its road, I think the warnings it gave were adequate as a matter of law. There is also another reason, besides the fact that the potholes posed no unreasonable risk of harm, why no warning was required: road conditions were open and obvious. Perry argues that in *Parker v. Highland Park, Inc.,*[11] we discarded the principle that there is no duty to warn of open and obvious conditions, even when the risk of danger is fully apparent and avoidable, because a plaintiff's failure to avoid injury due to an open an obvious condition is no more than one factor to be taken into account in comparing and assessing the responsibility of both the plaintiff and the defendant. As we explained long ago, that argument over-reads *Parker.*

In *Parker,* an elderly lady visiting friends in an upstairs apartment left after dark and fell, attempting to descend an unlit stairwell. She sued the owner of the apartment complex, alleging that the dark stairwell was an unreasonably dangerous condition. The owner countered that it owed her no duty of care because the darkness in the stairwell was open and obvious.[12] We rejected the argument, holding that liability should be determined under principles of contributory negligence and comparative responsibility.[13]

The flaw in the no-duty argument in *Parker* was that the stairwell was made no less dangerous by the fact that the darkness was open and obvious. The plaintiff and her hosts all tried to exercise caution, descending together slowly with a flashlight, but the plaintiff fell anyway because of an unseen step.[14] In such circumstances, a premises owner is not excused from liability merely because the risk of danger was open and obvious. The obviousness of the risk did not allow the plaintiff to avoid it. It remains a general rule, however,

9. Unattributed photograph found at supanet.com (http://www.supanet.com/motoring/car_gallery/gallery/939/1/).

10. *Ante* at 764.

11. 565 S.W.2d 512 (Tex.1978).

12. *Id.* at 513, 514.

13. *Id.* at 517, 521.

14. *Id.* at 514.

that a plaintiff must show that a defendant breached a duty of care. As we explained only a few years after *Parker* was decided:

> The term "no-duty," as used in *Parker*, referred to the oddity that had uniquely developed in Texas to confuse negligence law. It meant that a plaintiff had the burden to negate his own knowledge and his own appreciation of a danger. The rule that the plaintiff does not have the burden to obtain findings that disprove his own fault does not, however, mean that a plaintiff is excused from proving the defendant had a duty and breached it. A plaintiff does not have the burden to prove and obtain findings that he lacked knowledge and appreciation of a danger; he must, however, prove the defendant had a duty and breached it.[15]

It is one thing to reject the argument that an apartment owner has no duty to see to it that tenants and their guests can safely exit the premises; it is quite another to argue, as Perry does, that a landowner must warn truckers to be careful driving through potholes on a dirt road that are obvious and safely traversed without difficulty.

In *Lugo v. Ameritech Corp.*,[16] the Michigan Supreme Court rejected a pedestrian's claim that a pothole in a parking lot was unreasonably dangerous, holding that the owner owed her no duty because the condition was open and obvious:

> [T]ypical open and obvious dangers (such as ordinary potholes in a parking lot) do not give rise to [a uniquely high likelihood of harm].... [T]he condition is open and obvious and, thus, cannot form the basis of liability against a premises possessor.[17]

Most other states hold that the possessor of premises has no duty to warn of open and obvious conditions when any danger can be fully appreciated and averted by a reasonable person.[18] This is the rule of

---

15. *Dixon v. Van Waters & Rogers*, 682 S.W.2d 533, 533–534 (Tex.1984) (per curiam) (citation omitted).

16. 464 Mich. 512, 629 N.W.2d 384 (2001).

17. *Id.* 464 Mich. 512, 629 N.W.2d at 388.

18. *See Jones Food Co. v. Shipman*, 981 So.2d 355, 362–363 (Ala.2006) (landowner has no duty to warn of open and obvious hazards, even if invitee failed to perceive the risk of the condition); *McGlothlin v. Municipality of Anchorage*, 991 P.2d 1273, 1279 (Alaska 1999) (landowner has no duty to warn of open and obvious condition of which invitee is aware); *Kuykendall v. Newgent*, 255 Ark. 945, 504 S.W.2d 344, 345 (1974) ("The duties of owners and occupiers of land to business invitees usually end when the danger is either known or obvious to the invitee. However, most authorities ... recognize that under some circumstances a possessor of land may owe a duty to the business invitee despite the knowledge of the latter."); *Shanley v. Am. Olive Co.*, 185 Cal. 552, 197 P. 793, 794 (1921) ("[O]wner is entitled to assume that such invitee will perceive that which would be obvious to him upon the ordinary use of his own senses. He is not required to give to the invitee notice or warning of an obvious danger."); *Fleming v. Garnett*, 231 Conn. 77, 646 A.2d 1308, 1312–1313 (1994) (landowner has no duty to warn invitee of dangerous condition of which invitee was or should have been aware of); *Ashcroft v. Calder Race Course, Inc.*, 492 So.2d 1309, 1311–1312 (Fla.1986) ("A possessor of land is not liable to his invitees for physical harm caused to them by any activity or condition on the land whose danger is known or obvious to them, unless the possessor should anticipate the harm despite such knowledge or obviousness." (quoting RESTATEMENT(SECOND) OF TORTS § 343A(1) (1965))); *LaFever v. Kemlite Co.*, 185 Ill.2d 380, 235 Ill.Dec. 886, 706 N.E.2d 441, 447–448 (1998) (same); *Konicek v. Loomis Bros., Inc.*, 457 N.W.2d 614, 618 (Iowa 1990) (same); *Bonn v. Sears, Roebuck & Co.*, 440 S.W.2d 526, 528–529 (Ky. 1969) (landowner owes no duty to warn of "dangers that are known to the visitor or so obvious to him that he may be expected to discover them"); *Isaacson v. Husson Coll.*, 297 A.2d 98, 105 (Me.1972) (adopting RESTATEMENT(SECOND) OF TORTS § 343A(1) (1965));

the *Restatement (Second) of Torts*,[19] and is still the law in Texas.

*Lloyd v. Bowles*, 260 Md. 568, 273 A.2d 193, 196 (1971) ("If the injured person knew or should have known of the dangerous condition, there is no right to recovery ... the reason for the latter ruling being that the [landowner's] liability is based on a presumption that he has greater knowledge concerning the dangerous condition than the invitee."); *O'Sullivan v. Shaw*, 431 Mass. 201, 726 N.E.2d 951, 954–955 (2000) ("Landowners are relieved of the duty to warn of open and obvious dangers on their premises because it is not reasonably foreseeable that a visitor exercising (as the law presumes) reasonable care for his own safety would suffer injury from such blatant hazards."); *Riddle v. McLouth Steel Prods. Corp.*, 440 Mich. 85, 485 N.W.2d 676, 680–681 (1992) ("[W]here the dangers are known to the invitee or are so obvious that the invitee might reasonably be expected to discover them, an invitor owes no duty to protect or warn the invitee unless he should anticipate the harm despite knowledge of it on behalf of the invitee."); *Richardson v. Corvallis Pub. Sch. Dist. No. 1*, 286 Mont. 309, 950 P.2d 748, 753–756 (1997) (landowner owes no duty to warn "persons foreseeably upon the premises for physical harm caused to them by any activity or condition on the premises whose danger is known or obvious to them, unless the possessor should anticipate the harm despite such knowledge or obviousness."); *Tichenor v. Lohaus*, 212 Neb. 218, 322 N.W.2d 629, 632–633 (1982) (adopting RESTATEMENT(SECOND) OF TORTS § 343A(1) (1965)); *Tagle v. Jakob*, 97 N.Y.2d 165, 737 N.Y.S.2d 331, 763 N.E.2d 107, 109–110 (2001) ("We have long held that a landowner has no duty to warn of an open and obvious danger."); *Wrenn v. Hillcrest Convalescent Home, Inc.*, 270 N.C. 447, 154 S.E.2d 483, 484 (1967) (per curiam) ("However, defendant was under no duty to warn plaintiff, as an invitee, of an obvious condition or of a condition of which the plaintiff had equal or superior knowledge."); *Johanson v. Nash Finch Co.*, 216 N.W.2d 271, 276–278 (N.D. 1974) (adopting RESTATEMENT(SECOND) OF TORTS § 343A(1) (1965)); *Armstrong v. Best Buy Co.*, 99 Ohio St.3d 79, 788 N.E.2d 1088, 1089–1091 (2003) ("Where a danger is open and obvious, a landowner owes no duty of care to individuals lawfully on the premises."); *Nicholson v. Tacker*, 512 P.2d 156, 158 (Okla. 1973) ("It can be stated with equal force that the invitor has no duty to protect the invitee from dangers which are so apparent and

readily observable that one would reasonably expect them to be discovered."); *Carrender v. Fitterer*, 503 Pa. 178, 469 A.2d 120, 123–124 (1983) (adopting RESTATEMENT(SECOND) OF TORTS § 343A(1) (1965)); *Coln v. City of Savannah*, 966 S.W.2d 34, 40–44 (Tenn.1998) (same), *overruled on other grounds by Cross v. City of Memphis*, 20 S.W.3d 642 (Tenn.2000); *Hale v. Beckstead*, 116 P.3d 263, 265–270 (Utah 2005) (same); *Tazewell Supply Co. v. Turner*, 213 Va. 93, 189 S.E.2d 347, 349–350 (1972) (landowner owes no duty to warn "if the alleged dangerous condition was open and obvious to a person exercising reasonable care for his own safety."); *Monk v. Virgin Islands Water & Power Auth.*, 53 F.3d 1381, 1384–1388 (3d Cir.1995) (applying Virgin Islands law) (concluding RESTATEMENT(SECOND) OF TORTS § 343A(1) (1965) is consistent with Virgin Islands' adoption of comparative fault); *Tincani v. Inland Empire Zoological Soc'y*, 124 Wash.2d 121, 875 P.2d 621, 630–631 (1994) (adopting Restatement(Second) of Torts § 343A(1) (1965)).

A few jurisdictions have held that the openness and obviousness of the condition is relevant to whether the landowner breached a duty to the invitee, but not the threshold matter of whether the landowner owed a duty to warn of the condition. *See Markowitz v. Ariz. Parks Bd.*, 146 Ariz. 352, 706 P.2d 364, 367–368 (1985), abrogated in part by statute; *Smith v. Baxter*, 796 N.E.2d 242, 243–245 (Ind.2003); *Harris v. Niehaus*, 857 S.W.2d 222, 225–226 (Mo.1993).

Some other jurisdictions have concluded that this rule is inconsistent with their comparative fault statutes, *see Koutoufaris v. Dick*, 604 A.2d 390, 395–398 (Del.1992); *Harrison v. Taylor*, 115 Idaho 588, 768 P.2d 1321, 1323–1329 (1989); *Tharp v. Bunge Corp.*, 641 So.2d 20, 23–25 (Miss.1994); *Woolston v. Wells*, 297 Or. 548, 687 P.2d 144, 147–150 (1984), or another state statute, *see Vigil v. Franklin*, 103 P.3d 322, 328–332 (Colo.2004) (holding that COLO. REV. STAT. ANN. § 13–21–115 preempted the doctrine).

Lastly, some courts hold that whether a danger is open and obvious is merely one factor to be considered. *See, e.g., Pitre v. La. Tech Univ.*, 673 So.2d 585, 590–591 (La. 1996); *Klopp v. Wackenhut Corp.*, 113 N.M. 153, 824 P.2d 293, 297–298 (1992); *Rockweit by Donohue v. Senecal*, 197 Wis.2d 409, 541 N.W.2d 742, 748–749 (1995).

**19.** RESTATEMENT (SECOND) OF TORTS § 343 ("A

With respect, holding the owners of dirt roads liable for inadequately warning sand-and-gravel 18–wheeler truckers how to drive through potholes mocks the law of premises liability as well as common sense. I would render judgment for TXI, and accordingly, I dissent.

possessor of land is subject to liability for physical harm caused to his invitees by a condition on the land if, but only if, he (a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees, and (b) should expect that they condition on the land whose danger is known or obvious to them, unless the possessor should anticipate the harm despite such knowledge or obviousness."); see also RESTATEMENT(SECOND) OF TORTS § 343A cmt. f (1965) ("There are, however, cases in which the possessor of land can and should anticipate that the dangerous condition will cause physical harm to the invitee notwithstanding its known or obvious danger. In such cases the possessor is not relieved of the duty of reasonable care which he owes to the invitee for his protection. This duty may require him to warn the invitee, or to take other reasonable steps to protect him, against the known or obvious condition or activity, if the possessor has reason to expect that the invitee will nevertheless suffer physical harm.").

The proposed draft of the Restatement (Third) of Torts § 18(a) approaches the question of an open and obvious danger in a more philosophical manner, but the rule remains the same. RESTATEMENT (THIRD) OF TORTS: LIABILITY FOR PHYSICAL HARM § 18(a) (Proposed Final Draft No. 1, 2005) ("A defendant whose conduct creates a risk of physical harm can fail to exercise reasonable care by failing to warn of the danger if: 1) the defendant knows or has reason to know: (a) of that risk; and (b) that those encountering the risk will be unaware of it; and 2) a warning might be effective in reducing the risk of physical harm."); see also id. § 18 cmt. f ("Generally appreciated dangers. A defendant can be negligent for failing to warn only if the defendant knows or can foresee that potential victims will be unaware of the hazard. Accordingly, there generally is no obligation to warn of a hazard that should be appreciated by persons whose intelligence and experience are within the normal range. When the risk involved in the defendant's conduct is encountered by many persons, it may be foreseeable that some fraction of them will be lacking the intelligence or the experience needed to appreciate the risk. But to require warnings for the sake of such persons would produce such a profusion of warnings as to devalue those warnings serving a more important function.").