

## Fourth Court of Appeals
### San Antonio, Texas

## MEMORANDUM OPINION

No. 04-19-00121-CV

**TEXAS DEPARTMENT OF TRANSPORTATION**,
Appellant

v.

Rodolfo **CANALES**,
Appellee

From the 81st Judicial District Court, Karnes County, Texas
Trial Court No. 15-08-00191-CVK
Honorable Walden Shelton, Judge Presiding

Opinion by:     Irene Rios, Justice

Sitting:         Rebeca C. Martinez, Justice
                Irene Rios, Justice
                Liza A. Rodriguez, Justice

Delivered and Filed: January 8, 2020

AFFIRMED

Rodolfo Canales was injured when he lost control of his sport utility vehicle after its front right tire fell into a pothole that was at least seven to twelve inches deep. Canales sued the Texas Department of Transportation ("TxDOT") for premises liability, alleging the pothole was a special defect. In response, TxDOT asserted the trial court had no subject-matter jurisdiction over Canales's suit because sovereign immunity was not waived. In a plea to the jurisdiction, TxDOT

urged the trial court to dismiss Canales's suit.[1] The trial court denied the plea to the jurisdiction, and TxDOT appealed.

On appeal, TxDOT argues the trial court erred in denying the plea to the jurisdiction. In three issues, TxDOT argues sovereign immunity was not waived because (1) the pothole was not a special defect; (2) even if the pothole was a special defect, the evidence conclusively established that TxDOT adequately warned of the pothole; and (3) no evidence was presented to show that the pothole posed an unreasonable risk of harm. We affirm.

## BACKGROUND

In his petition, Canales alleged he was driving on F.M. 81 in Karnes County, Texas, when his 2005 Jeep Cherokee "struck" one or more unusually large potholes in the road, causing him to lose control of his vehicle, and sending him across the opposing lane of traffic and into a nearby fence post. Canales also alleged he was severely injured in the accident; TxDOT possessed, managed, and maintained the road where the accident occurred; the pothole in question was a special defect; and the pothole posed an unreasonable risk of harm to the public. Canales further alleged TxDOT knew or should have known of the special defect, and it breached its duty of ordinary care by neither adequately warning of the special defect nor making the special defect reasonably safe. Finally, Canales alleged sovereign immunity was waived because under the circumstances presented, a private person would be liable to Canales under Texas law.

In its plea to the jurisdiction, TxDOT asked the trial court to dismiss Canales's suit based on sovereign immunity. According to TxDOT, sovereign immunity was not waived because the evidence failed to show that a private person would be liable to Canales under Texas law. TxDOT

---

[1]TxDOT asserted its jurisdictional challenge in a pleading titled, "Motion to Dismiss for Lack of Jurisdiction." A motion to dismiss asserting the trial court lacks subject-matter jurisdiction is the functional equivalent of a plea to the jurisdiction. *Houston Indep. Sch. Dist. v. Durrell*, 547 S.W.3d 299, 303 n.3 (Tex. App.—Houston [14th Dist.] 2018, no pet.). In this opinion, we refer to TxDOT's motion to dismiss for lack of jurisdiction as a plea to the jurisdiction.

argued there was no evidence the condition Canales encountered was anything more than a common pothole; that the condition was not a special defect because it was not like an obstruction or excavation; that TxDOT did not have actual knowledge of the condition; that even if the condition was a special defect, the evidence conclusively established that TxDOT adequately warned of the condition; and there was no evidence that the condition posed an unreasonable risk of harm.

Canales filed a response to the plea to the jurisdiction, asserting immunity was waived because the condition he encountered was a special defect, TxDOT should have known of the condition, TxDOT did not adequately warn of the condition, and the condition posed an unreasonable risk of harm.

Thereafter, TxDOT filed a reply to Canales's response, and Canales filed a sur-reply.

Both TxDOT and Canales submitted evidence to support their jurisdictional arguments. This evidence included post-accident photographs of F.M. 81 and Canales's vehicle, the Texas Peace Officer's Crash Report ("crash report"), and the deposition testimony of various individuals, including Canales, the Department of Public Safety ("DPS") trooper who investigated the accident, a TxDOT maintenance supervisor, and a TxDOT engineer.

### SOVEREIGN IMMUNITY AND PREMISES LIABILITY CLAIMS

The State of Texas and its departments, like TxDOT, generally enjoy sovereign immunity from suit unless immunity has been waived. *Tex. Dep't of Transp. v. York*, 284 S.W.3d 844, 846 (Tex. 2009); TEX. CIV. PRAC. & REM. CODE ANN. § 101.001(3). The Texas Tort Claims Act ("TTCA") provides a limited waiver of immunity for tort claims arising from either premises defects or special defects. *Univ. of Tex. at Austin v. Hayes*, 327 S.W.3d 113, 115-16 (Tex. 2010). The TTCA waives immunity for claims arising from "personal injury . . . caused by a condition or

use of . . . real property if the governmental unit would, were it a private person, be liable to the [plaintiff] according to Texas law." TEX. CIV. PRAC. & REM. CODE ANN. §§ 101.021(2), 101.025.

When the complained-of condition is an ordinary premises defect, a governmental unit's duty is limited to the duty owed a licensee on private property. *City of Denton v. Paper*, 376 S.W.3d 762, 764 (Tex. 2012). But when the complained-of condition is a special defect, a governmental unit's duty is not so limited. *Id*. "Where a special defect exists, the [governmental unit] owes the same duty to warn as a private landowner owes to an invitee, one that requires the [governmental unit] to use ordinary care to protect an invitee from a dangerous condition of which the [governmental unit] is or reasonably should be aware." *Denton Cnty. v. Beynon*, 283 S.W.3d 329, 331 (Tex. 2009) (internal quotations omitted). In a "special defect" case, the governmental unit owes a duty either to make the roadway reasonably safe or to adequately warn of the hazard. *TXI Operations L.P. v. Perry*, 278 S.W.3d 763, 765 (Tex. 2009). The elements of proof required to establish a breach of this duty are: (1) a condition of the premises created an unreasonable risk of harm to the plaintiff; (2) the governmental unit knew or reasonably should have known of the condition; (3) the governmental unit failed to exercise ordinary care to protect the plaintiff from danger; and (4) the governmental unit's failure to exercise ordinary care was a proximate cause of injury to the plaintiff. *State Dep't of Highways & Public Transp. v. Payne*, 838 S.W.2d 235, 237 (Tex. 1992).

## PLEA TO THE JURISDICTION STANDARDS

Sovereign immunity deprives a trial court of subject matter jurisdiction and is properly raised in a plea to the jurisdiction. *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 225-26 (Tex. 2004). "Whether a court has subject matter jurisdiction is a question of law." *Id*. at 226. When, as here, the jurisdictional challenge implicates the merits of the plaintiff's cause of action and the plea to the jurisdiction includes evidence, the trial court's review generally mirrors

the summary-judgment standard. *Tarrant Reg'l Water Dist. v. Johnson*, 572 S.W.3d 658, 664 (Tex. 2019); *Miranda*, 133 S.W.3d at 227-28. If the evidence creates a fact question on the jurisdictional issue, then the trial court cannot grant the plea to the jurisdiction, and the factfinder must resolve the fact question. *Johnson*, 572 S.W.3d at 664 (citing *Miranda*, 133 S.W.3d at 227-28). On the other hand, if the relevant evidence is undisputed or fails to create a fact question on the jurisdictional issue, then the trial court rules on the plea to the jurisdiction as a matter of law. *Id*. (citing *Miranda*, 133 S.W.3d at 228).

On appeal, we review the trial court's ruling on a plea to the jurisdiction de novo. *Johnson*, 572 S.W.3d at 664. We consider the plaintiff's pleadings construed in his favor and any evidence relevant to the jurisdictional issue. *Miranda*, 133 S.W.3d at 226-27.

### SPECIAL DEFECT

In its second issue, TxDOT argues the trial court erred in denying its plea to the jurisdiction because the complained-of condition was not a special defect and because it did not have actual knowledge of the condition as required for an ordinary premises defect, and therefore, Canales failed to establish a waiver of sovereign immunity.[2]

"Whether a premises defect is special or ordinary is usually a question of law." *Paper*, 376 S.W.3d at 764. However, when the facts surrounding the condition are disputed, the factfinder must resolve the disputed facts before the trial court can determine if the condition is a special defect as a matter of law. *Villegas v. Tex. Dep't of Transp.*, 120 S.W.3d 26, 32 (Tex. App.—San Antonio 2003, pet. denied); *see Tex. Dep't of Transp. v. Lopez*, 436 S.W.3d 95, 105 (Tex. App.—Eastland 2014, pet. denied) (citing *Miranda*, 133 S.W.3d at 227-28). We review a trial court's

---

[2]We discuss TxDOT's actual knowledge argument in the final section of our opinion.

special defect determination de novo. *Tex. Dep't of Transp. v. Perches*, 388 S.W.3d 652, 655 (Tex. 2012).

### Spoliation Argument

Part of TxDOT's special defect argument is that the trial court erred by predicating its special defect ruling on a spoliation presumption. A party who establishes that spoliation has occurred may be entitled to a presumption that the destroyed evidence would have been unfavorable to the party who destroyed it. *Rico v. L-3 Commc'n Corp.*, 420 S.W.3d 431, 437 (Tex. App.—Dallas 2014, no pet.). However, in this case, the record does not demonstrate that the trial court's ruling was predicated on a spoliation presumption. At the plea to the jurisdiction hearing, the trial court expressed concern that the pothole was not measured and photographed before it was repaired, but the trial court did not file findings of fact and conclusions of law explaining the basis of its ruling. A trial court's comments are not a substitute for findings of fact and conclusions of law, and we are not entitled to consider them in conducting our review. *In re W.E.R.*, 669 S.W.2d 716, 716 (Tex. 1984); *Garcia v. Maverick Cnty.*, 850 S.W.2d 626, 628 (Tex. App.—San Antonio 1993, writ denied). Furthermore, when findings of fact and conclusions of law are not properly requested and filed, we affirm the trial court's ruling if it can be upheld on any legal theory that is supported by the evidence. *In re W.E.R.*, 669 S.W.2d at 716.

But even if the record demonstrated that the trial court applied a spoliation presumption, it would not affect our review in this case. Our standard of review is de novo. *See Perches*, 388 S.W.3d at 655. As will be discussed in greater detail below, considerable evidence was presented regarding the size of the pothole. We base our review on the evidence presented without applying a spoliation presumption.

***Special Defect Law***

"The TTCA does not define 'special defect' but likens it to 'excavations or obstructions' that exist 'on' the roadway surface." *Beynon*, 283 S.W.3d at 331. To constitute a special defect, the condition must be in the same class as an excavation or obstruction on a roadway. *Perches*, 388 S.W.3d at 655. The Texas Supreme Court has identified some "helpful characteristics" in making a special defect determination, including (1) the condition's size, (2) whether it unexpectedly and physically impairs an ordinary user's ability to travel on the roadway, (3) whether it presents some unusual quality apart from the ordinary course of events, and (4) whether it presents an unexpected and unusual danger to the ordinary users of the roadway. *Paper*, 376 S.W.3d at 765; *Hayes*, 327 S.W.3d at 116.

In *County of Harris v. Eaton*, the Texas Supreme Court held a "hole" in the road "varying at places from six to ten inches in depth and extending over ninety percent of the width of the highway" constituted a special defect. 573 S.W.2d 177, 178 (Tex. 1978). In its analysis, the supreme court described the hole as oval-shaped, four-feet to nine-feet wide, and deepest "astride the center stripe." *Id*. The supreme court also observed that "one could not stay on the pavement and miss [the hole]," and an approaching driver could see the hole from two hundred feet away "but could not tell its depth from that distance." *Id*.

In *City of Denton v. Paper*, the Texas Supreme Court held that a sunken area in the road, that varied from "two inches to a few inches more at its deepest point[,]" was not a special defect within the meaning of the TTCA. 376 S.W.3d at 765-66. There, the plaintiff sued the city for injuries she sustained when her bike's front wheel encountered the sunken area in the road, and she was "pitched over the handlebars." *Id*. at 764. The supreme court noted that unlike the roadway condition in *Eaton*, the sunken area, which was located near the center of the right lane, did not physically impair the plaintiff's ability to travel the road, noting that "ample room existed for a

bicycle to navigate around this hole without having to enter the opposing traffic lane" and "the photographs indicate[d] that the sunken area could have been avoided without leaving the roadway or entering the opposing lane." *Id*. at 765-66. The supreme court recognized that the class of special defects is narrow and does not include common potholes or similar depressions in the roadway. *Id*. at 766.

### *Special Defect Analysis*

Here, TxDOT argues the trial court erred in denying its plea to the jurisdiction because Canales presented no evidence of the pothole's size to support his contention that the pothole was a special defect. We disagree. Even though no one measured or photographed the pothole before TxDOT repaired it, considerable evidence of the pothole's size, both its depth and its width, was presented. Additionally, considerable evidence of the pothole's location in the lane of travel was presented. Not only was evidence of the pothole's size and its location in the lane of travel presented, this evidence was undisputed. Because the evidence concerning the pothole's size and location was undisputed, we are in a position to decide, as a matter of law, if the condition was a special defect. *See Johnson*, 572 S.W.3d at 664; *Miranda*, 133 S.W.3d at 227-28.

In his deposition, Canales testified he was driving on F.M. 81 between fifty-five and sixty miles per hour, which was below the posted speed limit of sixty-five miles per hour, when his right front tire fell into a pothole and his vehicle "lost forward movement." The pothole was in the vehicle's right wheel path. Canales testified that he did not see the pothole before his tire fell into it and that he came upon the pothole unexpectedly. Canales indicated that even if he had seen the pothole, he did not think he would have "swerve[d] around it" "at that speed." As to the pothole's size, Canales testified that "[i]t was deep, wide and long" and "it was deep enough for the tire to fit in there." Canales indicated the pothole was as wide as the wheel path, "if not wider," and estimated it was about a foot and a half wide.

The crash report, prepared by the investigating officer, Joseph Lerma, stated that Canales's vehicle, a Jeep Cherokee, was traveling on F.M. 81 when it "struck a pothole that was large enough for nearly the entire front right tire to fit into, causing [Canales] to lose control of the vehicle" and "enter[] a side skid across the left side of the road." The vehicle then hit "a large wooden fence post," overturned, and "came to rest upright on private property."

Lerma also testified by deposition that he arrived at the scene about an hour after Canales's accident and, even though he did not measure the pothole, he looked at the pothole and "notic[ed] that it was very large in size" and he thought, "[T]hat's a big pothole." According to Lerma, the pothole was larger than a normal pothole, larger than other potholes he had seen on F.M. 81, and "probably more than a foot wide." Lerma further testified that his statement in the crash report that the pothole "was large enough for nearly the entire front right tire to fit into" "most likely meant" that the pothole "was deep enough that when the tire went into the pothole, that it probably bottomed-out at least on that part of [] the frame of the vehicle."

The evidence included photographs of Canales's vehicle. These photographs showed that the frame of Canales's vehicle was seven to twelve inches from the ground.

The evidence also included photographs of the roadway where Canales encountered the pothole. These photographs showed that the roadway consisted of a single lane of traffic in each direction, divided only by a dotted yellow line and having no shoulder. The lane in which Canales was traveling contained multiple patched areas, indicating where potholes had been filled and covered with new pavement. Each of the patched areas was located in the right wheel path and spanned about a third of the lane.

TxDOT argues the photographs of the roadway conclusively establish that the pothole was not a special defect because it did not physically impair Canales's ability to travel on the roadway.

We reject this argument. The photographs of the roadway show that the pothole was completely in Canales's lane of travel and, more specifically, in his right wheel path.

TxDOT also argues the pothole in this case was like the condition in *City of Lancaster v. LaFlore*, which was not a special defect. No. 05-17-01443-CV, 2018 WL 4907843, at *5 (Tex. App.—Dallas Oct. 10, 2018, no pet.). In *LaFlore*, the plaintiff sued the City of Lancaster for injuries sustained when the car he was driving struck a partially dislodged manhole cover and caused him to lose control of the car. *Id*., at *1. The Dallas court of appeals held that the manhole, which was two feet in diameter and located "along the center strip between opposing lanes of traffic" was not a special defect. *Id*., at *5 (internal quotations omitted). In reaching its holding, the Dallas court of appeals rejected the plaintiff's claims that the manhole was unavoidable, noting that the "manhole with its protruding cover" was "not in the middle" of the plaintiff's lane, nor did it "prevent[] him from following the 'normal course of travel' on the road." *Id*. The present case, however, is distinguishable from *LaFlore*. Unlike the partially dislodged manhole cover located along the center strip of the road in *LaFlore*, the pothole in this case, which was located in the right wheel path, prevented Canales from following the normal course of travel.

TxDOT further argues the pothole was not a special defect because Canales could have driven around it. In support of this argument, TxDOT cites deposition testimony from the DPS trooper, Lerma, and a TxDOT engineer, William A. Lockett.[3] However, the testimony Lerma and

---

[3]  When asked if a driver could have avoided the pothole, Lerma, the DPS trooper, testified:

> Because I can't remember where the pothole was, I don't think that it was 100 percent unavoidable to hit the pothole. I believe that—I mean, it's very possible to avoid the pothole if—but for whatever reason, I don't know if it was due to the visibility, he didn't see it or whatever, I just—I think that it would have been possible to avoid the pothole.

Lerma did not state Canales could have avoided the pothole without leaving the roadway or entering the opposing lane.

When asked if Canales could have avoided the pothole, Lockett, a TxDOT engineer, testified:

Lockett provided is conclusive and speculative, and therefore, not probative evidence on this issue. *See Nat. Gas Pipeline Co. of Am. v. Justiss*, 397 S.W.3d 150, 156-57 (Tex. 2012) (explaining that opinion testimony that is conclusory or speculative is not probative evidence); *Coastal Transport Co., Inc. v. Crown Cent. Petroleum Corp.*, 136 S.W.3d 227, 233 (Tex. 2004) ("Opinion testimony that is conclusory or speculative is not relevant evidence because it does not tend to make the existence of a material fact 'more probable or less probable.'").

The question is not simply whether Canales could have avoided the pothole; it is whether he could have done so "without leaving the roadway or entering the opposing lane." *See Paper*, 376 S.W.3d at 765-66 (holding that a two to "a few inches more" depression in the road was not a special defect and noting that "the photographs indicate that the sunken area could have been avoided without leaving the roadway or entering the opposing lane."). After examining the photographs of the road as well as the other evidence presented, we cannot say that Canales could have avoided the pothole without leaving the roadway or entering the opposing lane of traffic. *See id.* at 765 (relying on photographs to conclude that "ample room existed for a bicycle to navigate around this hole without having to enter the opposing traffic lane."). The photographs show the placement of the pothole in the right wheel path of the lane in which Canales was traveling. Unlike the situation presented in *Paper*, the photographs show that a large sport utility vehicle like Canales's Jeep Cherokee would not have had "ample" room to navigate around the pothole without

---

> My opinion is if [] the pothole was the size of the right front tire, the lane width there is 11 to 12 feet. There was probably room for him to avoid it. . . . He could have slowed down. He could have positioned the vehicle to miss the pothole. . . .[Canales] could have [] guided the vehicle to miss the pothole. So I don't want to say swerve but he could have directed the vehicle in a manner to where it traveled to where he straddled the pothole.

Lockett also testified:

> I don't know what evasive movement [Canales] could have done. It's possible he could have avoided the pothole and stayed in the lane or been on the center line. . . . I don't know where the pothole was, so it's hard to say what he could have [done].

entering the opposing traffic lane or leaving the roadway. Other evidence further indicates Canales could not have avoided the pothole. Canales testified that he did not see the pothole before his tire fell into it. And, even though Canales was driving under the posted speed limit, he was still traveling at a high speed—between fifty-five and sixty miles per hour.

A condition's quality as a special defect depends, in large part, on the nature of the condition itself. *See id.* "The statutory test for a 'special defect,' for purposes of the TTCA, is simply whether the condition is of the same class as an excavation or obstruction on a highway, road, or street . . . ." *City of League City v. LeBlanc*, 467 S.W.3d 616, 621 (Tex. App.—Houston [1st Dist.] 2015, no pet.) (citing *Beynon*, 283 S.W.3d at 331 n.11)). "Although the question is one of law, courts consider each case's 'unique facts' in determining whether the alleged condition is of the same kind or class as an excavation or roadway obstruction." *LaFlore*, 2018 WL 4907843, at *4 (citing *Beynon*, 283 S.W.3d at 331-32 & n.15).

Here, the evidence showed that the pothole in this case was a hole in the road about a foot and a half wide and at least seven to twelve inches deep.[4] The evidence further showed that the pothole was deep enough and wide enough for the tire of a Jeep Cherokee to fit into it. The pothole Canales encountered was not an "ordinary" pothole. Its depth was comparable to the depth of the hole in *Eaton*, which was a special defect. *See Eaton*, 573 S.W.2d at 178 (concluding a "hole" in the road "varying at places from six to ten inches in depth and extending over ninety percent of the width of the highway" constituted a special defect).

We conclude the condition in this case was in the same class as an excavation or an obstruction and that it was a special defect as a matter of law. *See Beynon*, 283 S.W.3d at 331-32 (recognizing that to be classified as a special defect, a condition must be "like an excavation or

---

[4]Lerma testified that Canales's Jeep Cherokee "probably bottomed-out" when its tire fell into the pothole. Thus, the pothole may have been deeper than seven to twelve inches.

obstruction on a roadway"). We further conclude the trial court did not err in denying TxDOT's plea to the jurisdiction on the basis that the condition was not a special defect.

### UNREASONABLE RISK OF HARM

In its third issue, TxDOT argues the trial court erred in denying its plea to the jurisdiction because no evidence was presented to show that the complained-of condition posed an unreasonable risk of harm. *See Payne*, 838 S.W.2d at 237 (stating one of the elements required to establish a premises liability claim is that the condition created an unreasonable risk of harm).

"A condition poses an unreasonable risk of harm for premises-defect purposes when there is a sufficient probability of a harmful event occurring that a reasonably prudent person would have foreseen it or some similar event as likely to happen." *United Scaffolding, Inc. v. Levine*, 537 S.W.3d 463, 472 (Tex. 2017) (internal quotations omitted); *County of Cameron v. Brown*, 80 S.W.3d 549, 556 (Tex. 2002). What a reasonable person would do under the circumstances is often a question of fact. *Austin v. Kroger Tex., L.P.*, 465 S.W.3d 193, 204 (Tex. 2015). "[F]orseeability does not require that the exact sequence of events that produced an injury be foreseeable. Instead, only the general danger must be foreseeable." *Brown*, 80 S.W.3d at 556 (internal citations omitted).

To resolve this issue, we must determine if any evidence was presented to show that the complained-of condition posed an unreasonable risk of harm. Both TxDOT's engineer, Lockett, and TxDOT's maintenance supervisor, Joe Hernandez, acknowledged in their depositions that F.M. 81 had been abnormally damaged because of heavy truck traffic, specifically, energy sector traffic. According to Hernandez, F.M. 81 became "a hotspot" "when the energy sector kicked in" "with all the oil" and the road "wasn't built for this kind of traffic." Hernandez acknowledged that he could see the effects of the heavy traffic on the road surface, including the formation of potholes.

Additionally, Hernandez confirmed that in the two months preceding Canales's accident, TxDOT had been repairing potholes on F.M. 81 in Karnes County, which is where Canales's

accident occurred. Hernandez explained that TxDOT generally prioritized pothole repairs by size: larger potholes were given a higher priority and repaired more quickly than smaller potholes. According to Hernandez, the maintenance crew would "normally start on one end and try to work our way to and from; but if [the maintenance crew] did notice something that was larger as far as extremely large or whatever, they would fill in those before they would fill in the smaller potholes." Hernandez stated that potholes less than four inches deep were considered small, but "[a]nything larger than that we're filling in. Because if it's something large enough for a tire to fit in, it's taken care of."

Hernandez also acknowledged that a four-inch deep pothole on a road with a sixty-five mile per hour speed limit poses a danger to motorists, and that a pothole large enough for a tire to fit into would "possibly" pose an unreasonable risk of harm to motorists. Hernandez admitted that potholes, depending on their size, may affect a driver's ability to control his vehicle. And, Hernandez stated that a pothole big enough for a front tire to fit into would "possibly" affect a driver's ability to control his vehicle. Hernandez agreed that potholes should be repaired as soon as possible after they are observed or reported. Hernandez agreed it would have been prudent for TxDOT to repair a pothole like the one Canales encountered, stating: "If we saw it, we would have fixed it."

Canales testified by deposition that he was driving on F.M. 81 at about fifty-five to sixty miles per hour when this right front tire fell into a pothole and his vehicle "lost forward movement." Canales did not see the pothole, which was in the vehicle's right wheel path, before his tire fell into it. Furthermore, the trooper who investigated the accident, Lerma, stated in the crash report that when Canales's vehicle fell into the pothole, Canales lost control of the vehicle, and the vehicle skid across the opposing lane of traffic.

We reject TxDOT's argument that no evidence was presented to show that the complained-of condition posed an unreasonable risk of harm. As detailed above, some evidence was presented from which a jury could conclude that the complained-of condition posed an unreasonable risk of harm. The evidence presented showed that (1) potholes on the roadway may pose a risk of harm to motorists and, depending on the size of the potholes, this risk may be unreasonable; (2) deep potholes like the one Canales encountered may affect a driver's ability to control his vehicle; (3) given the heavy traffic and "abnormal wear and tear" on F.M. 81, it was probable that a harmful event like Canales's accident would occur; and (4) under the reasonably prudent person standard, a governmental unit would have foreseen that an event like Canales's accident, or some similar event, was likely to happen. We conclude the evidence raised a fact question as to whether the pothole Canales encountered posed an unreasonable risk of harm. Because the evidence raised a fact question as to whether the condition posed an unreasonable risk of harm, the trial court did not err in denying TxDOT's plea to the jurisdiction. *See Johnson*, 572 S.W.3d at 664 (providing that when the evidence creates a fact question on the jurisdictional issue, then the plea to the jurisdiction cannot be granted, and the fact question must be resolved by the factfinder).

## ADEQUATE WARNING OF THE CONDITION

In its first issue, TxDOT argues the trial court erred in denying its plea to the jurisdiction because, even if the condition was a special defect, the evidence conclusively established that TxDOT adequately warned of the condition.

A governmental unit has a duty either to warn of a special defect or to make the condition reasonably safe. *TXI Operations*, 278 S.W.3d at 765. When a governmental unit warns of a special defect, the warning it provides must be adequate under the circumstances. *See id*. To satisfy the governmental unit's duty to warn of a special defect, the warning must advise motorists of the particular condition that puts them at risk. *See Henkel v. Norman*, 441 S.W.3d 249, 252 (Tex.

2014) (recognizing, in a premises liability case against a property owner, that to be adequate, "a warning must be more than a general instruction[,]" "the warning must notify of the particular condition[,]" and "[w]arnings must be taken in context of the totality of the circumstances."); *TXI Operations*, 278 S.W.3d at 765 (concluding a speed limit sign was not adequate to warn of a pothole); *State v. McBride*, 601 S.W.2d 552, 557 (Tex. Civ. App.—Waco 1980, writ ref'd n.r.e.) (concluding the evidence supported the jury's finding that "SLOW" and speed limit signs did not adequately warn of the slick, muddy condition of the road).

Here, TxDOT argues the trial court should have granted its plea to the jurisdiction because the evidence conclusively established that signs on F.M. 81 adequately warned Canales of the pothole. Canales counters that he overcame TxDOT's jurisdictional challenge because the evidence raised a fact question as to whether TxDOT adequately warned of the complained-of condition. To resolve this issue, we must examine the evidence presented to determine if it conclusively established that TxDOT adequately warned of the pothole, or if it raised a fact question about whether TxDOT adequately warned of the complained-of condition.

In his deposition testimony, TxDOT maintenance supervisor, Hernandez, testified that at the time of Canales's accident, signs stating "Rough Road" were in place at two-mile intervals "throughout F.M. 81 and any other of the roadways that [] had some of the energy sector damage." Hernandez testified the maintenance staff had placed the "Rough Road" signs on these roadways at the direction of the area engineer. Additionally, Hernandez testified that the signs placed on F.M. 81 were the same as the "Rough Road" signs that appeared in the Texas Manual on Uniform Traffic Control Devices (MUTCD).[5] However, Hernandez acknowledged that a "Rough Road" sign did not specifically warn of potholes, rather it warned of "just a general rough road."

---

[5]The evidence also includes a copy of the Texas Manual on Uniform Traffic Control Devices (MUTCD), which states: "The 'ROUGH ROAD' [] sign [] may be used to warn of a rough roadway surface."

Next, TxDOT's engineer, Lockett, who was responsible for signage on the roadway where the accident occurred, testified:

Counsel:    Do you agree that no sign or signage existed that warned that that pothole [the pothole Canales's vehicle struck] was present?
….

Lockett:    No, I disagree.

Counsel:    All right. And where was the signage that warned Mr. Canales and other drivers that that pothole existed?

Lockett:    There was signage on FM-81 for a rough road.

Counsel:    Where?

Lockett:    On FM-81.

Counsel:    Where?

Lockett:    On FM-81.

Counsel:    So you can't tell us where on FM-81—

Lockett:    I can't tell you where there was a specific sign on FM-81.

Lockett further testified:

Counsel:    [] Do you agree that warning signs should not be placed too far in advance of the condition they are warning about?

Lockett:    Yes, sir.

Counsel:    Do you agree that if a warning sign is placed too far in advance of the condition it is warning about, drivers would tend to forget the warning?

Lockett:    Yes, sir.

            ….

Counsel:    Assuming that rough road signage was installed on FM-81 [before Canales's accident occurred], what was the distance between the signage?

- 17 -

Lockett: I don't know that exact answer. I know there was an initiative to place rough road signs on a lot of the roads in the county that had abnormal damage. And usually when that was done, it was at a two-mile distance.

Finally, Lockett testified that "[a] rough road sign warns of various conditions" and "there's a wide range of conditions that fall under rough road."

TxDOT argues that because evidence was presented that "Rough Road" signs were placed at two-mile intervals along F.M. 81, it conclusively established that it adequately warned Canales of the pothole. However, as shown above, the evidence failed to show where the warning signs were placed in relation to the pothole Canales encountered. Specifically, Lockett testified that he did not know where a sign was placed in relation to the pothole in question and he acknowledged that a warning sign should not be placed too far in advance of the condition in question. Additionally, Hernandez testified that a "Rough Road" sign provides a general warning about a rough roadway surface, but it does not specifically warn of potholes.

The evidence presented did not conclusively establish that TxDOT warned Canales of the particular condition he encountered, that is, a pothole deep and wide enough to physically impair a vehicle's ability to travel on the roadway, and posing an unexpected and unusual danger to an ordinary user of the roadway. *See TXI Operations*, 278 S.W.3d at 765 (holding a jury could have properly concluded that a fifteen-miles-per-hour speed limit sign did not adequately warn of a pothole); *Tex. Dep't of Transp. v. Milton*, No. 05-16-00955-CV, 2018 WL 4042486, at *3 (Tex. App.—Dallas Aug. 24, 2018, pet. denied) (concluding it was in the jury's province to disbelieve expert testimony that a sign was adequate to warn of a dangerous road condition when the evidence showed the sign was not placed as directed in the work order and was placed two miles ahead of the condition); *McBride*, 601 S.W.2d at 557 (holding the State did not adequately warn drivers of a slick and muddy road with signs that stated, "SLOW" and "35 MPH"). Rather, the evidence

presented raised a fact question as to whether TxDOT adequately warned of the condition in question. Because the evidence raised a fact question as to whether TxDOT adequately warned of the condition, the trial court did not err in denying TxDOT's plea to the jurisdiction. *See Johnson*, 572 S.W.3d at 664 (providing that when the evidence creates a fact question on the jurisdictional issue, then the plea to the jurisdiction cannot be granted, and the fact question must be resolved by the factfinder).

***Discretionary Function Argument***

In the same issue, TxDOT argues that its decision to use "Rough Road" signs to warn of surface conditions, like potholes, was a discretionary policy decision for which it retained immunity under section 101.056 of the Texas Civil Practice and Remedies Code. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 101.056. Under section 101.056, a governmental unit retains immunity when "a claim" is "based on" its failure to perform an act that it is not required by law to perform, or its decision not to perform an act or its failure to make a decision on the performance or nonperformance of an act, if the law leaves the matter to the governmental unit's discretion. *See id.*

The Texas Supreme Court has recognized that "even if sign-placement decisions are discretionary, the State waives immunity for 'the duty to warn of special defects such as excavations or roadway obstructions.'" *State v. Rodriguez*, 985 S.W.2d 83, 85 (Tex. 1999), *abrogated on other grounds by Beynon*, 283 S.W.3d at 331 n.11.; *see Tex. Dep't of Transp. v. Gutierrez*, 243 S.W.3d 127, 135 (Tex. App.—San Antonio 2007), *rev'd on other grounds*, 284 S.W.3d 848 (Tex. 2009) (rejecting TxDOT's argument that it retained immunity for its decisions concerning the type and placement of warning signs with respect to its duty to warn of a special defect). Because we have determined that the condition in question was a special defect, we conclude that TxDOT did not retain immunity under section 101.056 of the Texas Civil Practice

and Remedies Code. *See Rodriguez*, 985 S.W.2d at 85 (providing that even if sign placement decisions are discretionary, the State still waives immunity when the case involves a special defect).

### ACTUAL KNOWLEDGE OF THE CONDITION

TxDOT also argues the trial court erred in denying its plea to the jurisdiction because the evidence did not create a fact question regarding its actual knowledge of the condition. Proof of actual knowledge is required when a premises liability claim is based on an ordinary premise defect; however, proof of actual knowledge is not required when a premises liability claim is based on a special defect. *See York*, 284 S.W.3d at 847; *see also* TEX. CIV. PRAC. & REM. CODE ANN. 101.022 (prescribing distinct duties owed by governmental units for ordinary and special defects). Instead, "a plaintiff need only prove that the governmental unit should have known of a condition that created an unreasonable risk of harm." *York*, 284 S.W.3d at 847. Because we have already concluded that the pothole in this case was a special defect, we need not address TxDOT's argument that no fact question was raised as to its actual knowledge of the condition. *See* TEX. R. APP. P. 47.1 (providing that opinions should be as brief as practicable while addressing every issue raised and necessary to the final disposition of the appeal).

### CONCLUSION

The trial court did not err in denying TxDOT's plea to the jurisdiction. Therefore, the order denying TxDOT's plea to the jurisdiction is affirmed.

Irene Rios, Justice