

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————

No. 02-19-00435-CV

———————————————

M.A. MORTENSON COMPANY, Appellant

V.

JAMES M. SHELTON, Appellee

On Appeal from the 271st District Court
Wise County, Texas
Trial Court No. CV14-04-241

Before Sudderth, C.J.; Kerr and Bassel, JJ.
Memorandum Opinion by Chief Justice Sudderth

## MEMORANDUM OPINION

## I. INTRODUCTION

James M. Shelton sued M.A. Mortenson Company and others for injuries he sustained in a one-vehicle rollover accident. A jury found Mortenson, the only defendant remaining at the time of trial, liable under theories of negligent undertaking and premises liability, and awarded actual damages of over $7 million. The jury attributed 75% of the responsibility for Shelton's accident to Mortenson and apportioned the remaining 25% among three responsible third parties. On appeal, Mortenson asserts that negligent undertaking is not a cognizable theory of liability under the circumstances of this case and that the evidence is insufficient to support the jury's findings on premises liability and proportionate responsibility. We affirm.

## II. BACKGROUND

### A. The Windmill Project

Mortenson was the general contractor on an Archer County windmill farm project called Bobcat Bluff Windmill Farm. The project developer, enXco, engaged Westwood Professional Services, an engineering firm, to create plans for the roads in and around the project site. Those plans encompassed work to be performed on Bell Road, a public road running from a highway to and past the windmill farm site. Mortenson engaged J.H. Strain & Sons, Inc. as a subcontractor to perform the road work. Mortenson also subcontracted with L.O. Transport to provide trucking

services. All truck drivers on the project were either L.O. Transport employees or independent contractors.

Mortenson and L.O. Transport conducted regular safety meetings at which all on-site truck drivers were instructed that the speed limit on Bell Road was 15 miles per hour and that empty or unloaded trucks must yield the right-of-way to loaded trucks. Several truck drivers testified that they were aware of the right-of-way rule and that it is a standard trucking rule.

## B. The Accident

On April 12, 2012, Shelton was driving a loaded truck along Bell Road with three other loaded trucks following him. At least two of these truck drivers radioed ahead that they were coming in on Bell Road. Nonetheless, William "Pops" Crowley, L.O. Transport's assistant supervisor, instructed two empty trucks to leave the site. Eric Mancil drove the lead truck, and Donald North drove the second truck. Both trucks were exceeding the speed limit and driving near the center of the road as they approached Shelton, who was coming in the opposite direction. The trucks neared each other at a point where the road narrowed as it passed over a culvert, but Mancil and North did not yield the right-of-way to Shelton even though there was a pull-out area designed for that very purpose. Because the road was too narrow for the trucks to pass one another, Shelton turned his truck a little toward the side of the road to

avoid a head-on collision.[1]  The road edge failed to support the weight of his truck,

the tires sank into the soft ground, and the truck overturned.

## C.    The Condition of Bell Road

Several witnesses testified that Mancil and North had caused the accident by

failing to comply with the right-of-way rule.  But there was also testimony that the

accident would not have occurred if the area where Bell Road crossed the culvert had

been widened to accommodate two trucks passing in opposite directions.  There was

conflicting evidence concerning whether drivers were specifically informed about the

narrowing of the road at the culvert.

A Texas State trooper who arrived at the scene shortly after the accident

opined that the rollover likely would not have occurred if the road had included a

shoulder or slope[2] or if it had been wider.  He testified that the road was a typical

West Texas caliche road and that it was unusual for such roads to have slopes or

shoulders.  But he also testified that it was not typical to have two-way rock-hauler

traffic on such roads and that such a situation would require special attention and

special safety rules.

Shelton presented expert testimony that the road at the accident site was

hazardous because it was too narrow for two-way traffic, had no shoulders, was

---

[1]The trucks hauling stone in and out of the site were 8 to 8 1/2 feet wide, and the road at the site of the accident was 15 to 16 feet wide.

[2]Slope is the grade from the road to the ditch.

improperly sloped, had steep drop-offs at the edge, and lacked pavement markers or barriers to define the road edge. The expert opined that the failure to construct proper slopes, as required by the plans, created a dangerous condition that was a cause of Shelton's accident.

Mortenson's corporate representative, David Dreis, testified that Mortenson was aware that the road at the culvert was too narrow for trucks to pass and that Mortenson could have obtained a permit to widen the road but had made a conscious decision not to do so. Dreis acknowledged that the culvert area was unsafe and that Mortenson could have built slopes but had chosen not to because it did not see a need for them. Mortenson also did not put up signs warning of the narrowing at the culvert because the county had not put up any such signs. Dreis conceded that leaving the culvert area as it was had increased Shelton's potential to be harmed.

Dreis acknowledged that Mortenson's contract with enXco imposed on Mortenson the duty to "[m]aintain access on public and private roads within the Project boundary to allow safe, unimpeded vehicular travel by the public." He also acknowledged that Mortenson's decision not to widen the road at the culvert had resulted in a less safe, impeded portion of road. And while Dreis at first asserted that the road was closed to the public during construction, he later conceded that the public was able to access the road during that period. He further conceded that the public would not have been aware of the right-of-way rule or of the hazard created by the narrowing of the road at the culvert.

**D.     The Jury's Findings**

The trial court submitted two questions to the jury inquiring whether Mortenson's negligence, if any, proximately caused Shelton's injury. In conjunction with Question 1—the negligent undertaking submission—the court instructed the jury that Mortenson was negligent if

- it undertook to perform services that it knew or should have known were necessary for Shelton's protection;

- it failed to exercise reasonable care in performing those services; and

- its performance increased Shelton's risk of harm, or Shelton relied upon Mortenson's performance.

In conjunction with Question 2—the premises liability submission—the court instructed the jury that Mortenson was negligent if

- the condition on the premises posed an unreasonable risk of harm;

- Mortenson knew or reasonably should have known of the danger; and

- Mortenson failed to exercise reasonable care to protect Shelton from the danger "by both failing to adequately warn [of] the condition and failing to make the condition reasonably safe."

The jury answered both liability questions, "Yes." It also found that the negligence of Mancil, North,[3] and L.O. Transport caused Shelton's injury and apportioned responsibility 75% to Mortenson, 10% to Mancil, 5% to North, and 10% to L.O. Transport. The jury awarded actual damages exceeding $7 million. After

---

[3]The submission as to North also included his employer, Charlie Martin Trucking Inc.

6

applying a $1,285,000 settlement credit, the trial court entered judgment in accordance with the jury's verdict.

## III.  DISCUSSION

### A.    Negligent Undertaking

#### 1.    Viability of the negligent undertaking claim

In its first issue on appeal, Mortenson contends that the trial court erred by submitting Shelton's negligent undertaking claim to the jury.  Mortenson objected at trial to submitting that theory of liability on the ground that it was not a legally cognizable claim under the circumstances of the case.  The error is thus preserved for our review.  *See* Tex. R. App. P. 33.1.

Texas law recognizes that "a duty to use reasonable care may arise when a person undertakes to provide services to another, either gratuitously or for compensation."  *Torrington Co. v. Stutzman*, 46 S.W.3d 829, 837–38 (Tex. 2000) (citing *Fort Bend Cty. Drainage Dist. v. Sbrusch*, 818 S.W.2d 392, 396 (Tex. 1991); *Colonial Sav. Ass'n v. Taylor*, 544 S.W.2d 116, 120 (Tex. 1976)).  The essential elements of a negligent undertaking claim are (1) the defendant undertook to perform services that it knew or should have known were necessary for the plaintiff's protection, (2) the defendant failed to exercise reasonable care in performing those services, and either (3) the plaintiff relied upon the defendant's performance, or (4) the defendant's performance increased the plaintiff's risk of harm.  *See id.* at 838.

7

The threshold inquiry in every negligence case is whether a duty exists. *Kroger Co. v. Elwood*, 197 S.W.3d 793, 794 (Tex. 2006) (per curiam); *Thapar v. Zezulka*, 994 S.W.2d 635, 637 (Tex. 1999). This inquiry presents a question of law. *Kroger*, 197 S.W.3d at 794; *Thapar*, 994 S.W.2d at 637. "The critical inquiry concerning the duty element of a negligent-undertaking theory is whether a defendant acted in a way that requires the imposition of a duty *where one otherwise would not exist*." *Nall v. Plunkett*, 404 S.W.3d 552, 555 (Tex. 2013) (per curiam) (emphasis added).

Relying on the emphasized language from *Nall*, Mortenson argues that it did not owe Shelton any duty under a negligent undertaking theory because it already owed him independent duties as defined by premises liability law. Indeed, the trial court recognized the existence of those duties by submitting Shelton's premises liability theory to the jury. *See Clayton W. Williams, Jr., Inc. v. Olivo*, 952 S.W.2d 523, 527 (Tex. 1997) (stating that general contractor in control of premises owes duty to use reasonable care to make and keep premises safe for business invitees). Mortenson contends that the trial court therefore erred by also submitting negligent undertaking.

Shelton responds that we should disregard the quoted language from *Nall* as mere dicta, which the supreme court has defined as "[a]n opinion expressed by a court, but which, not being necessarily involved in the case, lacks the force of an adjudication." *Seger v. Yorkshire Ins. Co.*, 503 S.W.3d 388, 399 (Tex. 2016) (quoting *Grigsby v. Reib*, 153 S.W. 1124, 1126 (Tex. 1913)). Shelton contends that because *Nall*

8

was decided on a procedural issue, duty was not necessarily involved, and the court's comment concerning duty is therefore dicta. We disagree.

Plunkett, the plaintiff in *Nall*, was injured during a party at the Nalls' residence. 404 S.W.3d at 554. He sued the Nalls for negligent undertaking and premises liability. *Id.* The Nalls moved for summary judgment on the negligence claim on the ground that they owed Plunkett no duty. *Id.* The trial court granted summary judgment, and Plunkett appealed, asserting that the Nalls' motion addressed duty based only on social host liability, not on his negligent undertaking theory. *Id.* The supreme court disagreed, holding that the Nalls had addressed the negligent undertaking claim by arguing that the court's holding in *Graff v. Beard*, 858 S.W.2d 918 (Tex. 1993), foreclosed the assumption of any duty by a social host under the facts of the case. *Nall*, 404 S.W.3d at 554.

To reach its conclusion that the Nalls' summary judgment motion challenged the duty element of Plunkett's negligent undertaking claim, the supreme court necessarily had to consider what that duty element entailed. And it was in this context that the court stated, "The critical inquiry concerning the duty element of a negligent-undertaking theory is whether a defendant acted in a way that requires the imposition of a duty where one otherwise would not exist." *Id.* at 555. We conclude that this statement is not mere dicta.[4] *See Seger*, 503 S.W.3d at 399.

---

[4]Several courts of appeals have cited this language from *Nall* with approval. *See, e.g.*, *Garcia v. Kellogg Brown & Root Servs., Inc.*, No. 01-19-00319-CV, 2020 WL

9

We also note that, in a case that preceded *Nall*, the Thirteenth Court of Appeals concluded that "a negligent undertaking theory is not appropriate when a particular duty or contractual obligation already exists and liability can be governed within that standard." *De Sanchez v. Sporran EE, Inc.*, No. 13-08-00541-CV, 2010 WL 3420572, at *5 (Tex. App.—Corpus Christi–Edinburg Aug. 31, 2010, no pet.) (mem. op.). The plaintiffs in *De Sanchez* sued a bus company for the death of an intoxicated relative who was struck by a car and killed after having been removed from a bus by the driver. *Id.* at *1–2. The trial court submitted a negligence question accompanied by instructions concerning a common carrier's duty to its passengers. *Id.* at *2. The court refused the plaintiffs' request for additional instructions necessary to submit the theory of negligent undertaking. *Id.* at *3.

The court of appeals noted that it was undisputed that the bus company owed a duty of care imposed by the common law on common carriers. *Id.* at *5–6. Because there was no evidence that the bus company took any affirmative action to undertake any additional duties—that is, any duties that did not otherwise already exist—the negligent undertaking theory did not apply. *Id.* at *5.

---

3820426, at *10 (Tex. App.—Houston [1st Dist.] July 7, 2020, no pet.) (mem. op.); *Kuentz v. Cole Sys. Grp., Inc.*, 541 S.W.3d 208, 213 (Tex. App.—Houston [14th Dist.] 2017, no pet.); *Flanagan v. RBD San Antonio L.P.*, No. 04-16-00761-CV, 2017 WL 5615567, at *6 (Tex. App.—San Antonio Nov. 22, 2017, pet. denied) (mem. op.); *Knife River Corp.-S. v. Hinojosa*, 438 S.W.3d 625, 632 (Tex. App.—Houston [1st Dist.] 2014, pet. denied).

In reaching its conclusion, the *De Sanchez* court considered our opinion in *Dukes v. Philip Johnson/Alan Ritchie Architects, P.C.*, 252 S.W.3d 586 (Tex. App.—Fort Worth 2008, pet. denied). The defendants in that case were hired by the City of Fort Worth as consulting architects to perform an architectural assessment of the Fort Worth Water Gardens. *Id.* at 590. The scope of their contractual obligations did not include performing a safety review. *Id.* at 595. A few years after the defendants conducted their assessment, the plaintiffs' decedents—a man and three children— drowned at the Water Gardens. *Id.* at 590.

On appeal from a take-nothing summary judgment, the plaintiffs asserted that they had a viable claim for negligent undertaking based on the defendants' inspection of the Water Gardens. *Id.* at 590, 597–98. We recognized, however, that such inspection was nothing more than the defendants' complying with their existing contractual obligation. *Id.* at 598. In addition, the defendants' contractual obligation defined the scope of their duty and did not include a safety assessment. *Id.* We refused to disregard the plain language of the contract that clearly defined the scope of the defendants' duty merely because the plaintiffs argued that a negligent undertaking theory applied. *Id.* at 599.

Our analysis and conclusion in *Dukes* are in keeping with the *Nall* court's statement that negligent undertaking may impose a duty "where one otherwise would not exist." *Nall*, 404 S.W.3d at 555. At the time of the conduct for which they were sued, the *Dukes* defendants were acting in accordance with duties imposed on them by

11

a contract. *See* 252 S.W.3d at 598. Applying a negligent undertaking theory was therefore precluded by duties that "otherwise existed." *See Nalls*, 404 S.W.3d at 555.

In the present case, Mortenson owed a duty to Shelton "to make safe or warn against any concealed, unreasonably dangerous conditions of which the landowner is, or reasonably should be, aware but the invitee is not." *See Austin v. Kroger Tex., L.P.*, 465 S.W.3d 193, 203 (Tex. 2015); *see also United Scaffolding, Inc. v. Levine*, 537 S.W.3d 463, 474 (Tex. 2017) (recognizing duty of general contractor in control of premises to invitee); *Olivo*, 952 S.W.2d at 527 (same). Shelton alleged the breach of that duty, and the trial court submitted his premises liability theory to the jury. In the face of this existing duty, Shelton did not have a viable claim for negligent undertaking, and the trial court erred by submitting that additional theory to the jury.

### 2. *Casteel* error

Mortenson argues that the erroneous submission of negligent undertaking requires a remand of Shelton's premises liability theory because it resulted in *Casteel*[5] error in the proportionate responsibility submission. The jury was asked two discrete questions concerning Mortenson's negligence—one based on premises liability and one based on negligent undertaking—and returned two discrete affirmative findings. But the jury was asked only one proportionate responsibility question, which was predicated on an affirmative answer to either or both of the liability questions. In

---

[5]*Crown Life Ins. Co. v. Casteel*, 22 S.W.3d 378 (Tex. 2000).

12

response to that question, the jury allocated responsibility for Shelton's accident as follows: 75% to Mortenson; 10% to Mancil; 5% to North; and 10% to L.O. Transport.

Mortenson contends that the error in submitting negligent undertaking requires that we reverse the judgment and remand this cause for a new trial because it is not possible to tell whether the jury's allocation of responsibility was based on the valid premises liability theory or the invalid negligent undertaking theory. Mortenson did not, however, object at trial to submitting only one proportionate responsibility question.

In *Romero v. KPH Consolidation, Inc.*, 166 S.W.3d 212 (Tex. 2005), the supreme court expressly reserved the question of whether a defendant "must object to both the lack of evidence supporting a claim and an apportionment question predicated on more than one ground of recovery." *Emerson Elec. Co. v. Johnson*, No. 18-1181, 2021 WL 1432226, at *10 (Tex. Apr. 16, 2021) (citing *Romero*, 166 S.W.3d at 229). The court recently answered that question in *Emerson*.

*Emerson* was a products liability case in which the jury found Emerson liable based on a design defect and a marketing defect. *Id.* The supreme court upheld the design defect finding and declined to address Emerson's challenges to the marketing defect finding because that theory of liability would not have resulted in any greater relief. *Id.* Emerson argued that the court should address both liability theories because the jury was asked only one apportionment question and its allocation of

13

responsibility might have been different based on the type of liability it found. *Id.* The court did not address the substance of this argument, noting instead that Emerson "never made the trial court timely and plainly aware of any *Casteel*-type error in the apportionment question." *Id.* Thus, the supreme court tacitly answered the question left open in *Romero*—a defendant seeking to raise *Casteel* error in an apportionment question must object in the trial court to including multiple theories of recovery in the apportionment question. *See id.*; *Romero*, 166 S.W.3d at 229.

Mortenson did not inform the trial court of any *Casteel* error in the apportionment question. It therefore did not preserve that asserted error for our review. *See Emerson*, 2021 WL 1432226, at *10; *see also* Tex. R. App. P. 33.1.

We sustain Mortenson's first issue insofar as it asserts that the trial court erred by submitting negligent undertaking to the jury. We overrule the first issue insofar as it asserts that Mortenson is entitled to reversal based on *Casteel* error in the apportionment question resulting from that erroneous submission.

## B. Premises Liability

### 1. Sufficiency standards of review

Mortenson next contends that the evidence is legally and factually insufficient to support the jury's premises liability finding. Whether there is legally sufficient evidence to support a jury finding is determined by "view[ing] the evidence in the light favorable to the verdict, crediting favorable evidence if reasonable jurors could, and disregarding contrary evidence unless reasonable jurors could not." *City of Keller v.*

14

*Wilson*, 168 S.W.3d 802, 807 (Tex. 2005). A legal sufficiency challenge will be sustained only if

> (1) the record discloses a complete absence of evidence of a vital fact; (2) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact; (3) the evidence offered to prove a vital fact is no more than a mere scintilla; or (4) the evidence establishes conclusively the opposite of the vital fact.

*Marathon Corp. v. Pitzner*, 106 S.W.3d 724, 727 (Tex. 2003) (per curiam).

A reviewing court considering a claim of factual insufficiency considers and weighs all of the evidence pertinent to the challenged finding. *Crosstex N. Tex. Pipeline, L.P. v. Gardiner*, 505 S.W.3d 580, 615 (Tex. 2016); *Campbell v. Pompa*, 585 S.W.3d 561, 571–72 (Tex. App.—Fort Worth 2019, pet. denied). It may sustain a factual insufficiency challenge only if the credible evidence supporting it is "so weak, or so contrary to the overwhelming weight of all the evidence, that the answer should be set aside and a new trial ordered." *Crosstex*, 505 S.W.3d at 615; *Campbell*, 585 S.W.3d at 572.

### 2. Preservation and invited error

Shelton argues that Mortenson waived its legal sufficiency challenge because it invited error by submitting a proposed order to the trial court denying its JNOV motion. But Mortenson submitted the proposed order only after the court had rendered its decision denying that motion. "A party should not be estopped from challenging a court's order when the party provides to the court a proposed order following what it believes was the court's ruling at the hearing, and the court signs it."

15

*In re Bahn*, 13 S.W.3d 865, 875 (Tex. App.—Fort Worth 2000, orig. proceeding). Mortenson is not precluded from asserting its legal insufficiency challenge merely because it submitted a proposed order reflecting the trial court's previously announced decision.

Shelton also argues that Mortenson's motion for new trial was inadequate to preserve its factual sufficiency challenges. *See* Tex. R. Civ. P. 324(b) (requiring that factual sufficiency be raised in motion for new trial). We disagree. Mortenson's motion for new trial specifically asserted that the evidence is factually insufficient to support each of the jury's findings.

### 3. The jury charge

Mortenson, as general contractor in control of the premises, owed a duty to Shelton to make safe or warn against any concealed, unreasonably dangerous conditions of which Mortenson was, or reasonably should have been, aware but Shelton was not. *See Austin*, 465 S.W.3d at 203. The jury was accordingly instructed that Mortenson was negligent with respect to the condition of the premises if

a. The condition posed an unreasonable risk of harm, and

b. M.A. Mortenson Company knew or reasonably should have known of the danger, and

c. M.A. Mortenson Company failed to exercise reasonable care to protect James Shelton from the danger, by both failing to adequately warn [of] the condition and failing to make the condition reasonably safe.

16

*See id.* at 202–03 (explaining that landowner may satisfy duty to invitee by warning of condition or by making it reasonably safe).

Mortenson asserts that Section (c) of this instruction is incorrect (but purportedly to Mortenson's advantage) because it places a burden on Shelton to prove that Mortenson *both* failed to adequately warn of the condition and failed to make the condition reasonably safe. It further asserts that the sufficiency of the evidence must be measured against the instruction as given because Shelton did not object to it. *See Osterberg v. Peca*, 12 S.W.3d 31, 55 (Tex. 2000).

We agree that "it is the court's charge, not some other unidentified law, that measures the sufficiency of the evidence when the opposing party fails to object to the charge." *Id.* But that principle is of no consequence in this case because the court's charge accurately stated the law. Mortenson could have discharged its duty to exercise reasonable care either by adequately warning of the subject condition or by making that condition reasonably safe. *See Austin*, 465 S.W.3d at 202. It stands to reason, then, that Shelton would have to prove that Mortenson did neither of those things to establish that it had failed to discharge its duty. That is what the jury charge required because a finding that Mortenson both failed to warn and failed to make the condition safe is simply a finding that it did neither.

### 4. Duty to warn

Mortenson first argues that it had no duty to warn about the dangerous condition of Bell Road because that condition was open and obvious. Significantly,

17

Mortenson identifies the dangerous condition at issue as the narrowing of the road near the culvert and the inability of trucks to pass one another in that area. Shelton, however, identifies as additional dangerous conditions the existence of soft shoulders that could not support the weight of construction vehicles and steep drop-offs at the edge of the road that were obscured by vegetation.

"[S]ince there is no need to warn against obvious or known dangers, a landowner generally has no duty to warn of hazards that are open and obvious or known to the invitee." *Id.* at 204. Assuming without deciding that the evidence conclusively established that the narrowing of the road in the area of the culvert was open and obvious, that evidence does not conclusively establish that the *danger* presented by that narrowing was open and obvious. Indeed, Mancil and North testified that they believed the road in that area was a two-lane road capable of permitting two trucks to pass one another.

In addition, even if it were readily apparent that only one truck could pass over the culvert area at a time, the evidence does not conclusively establish that the danger presented by pulling off to the side to permit another truck to pass was readily apparent. There is evidence that the edge of the road was soft, lacked shoulders or the proper slope, and was obscured by vegetation and that these conditions presented an unreasonable risk of a rollover accident such as occurred in this case. Mortenson cites testimony from some of the truck drivers that the road had a steep drop-off or ditch all the way from the highway to the worksite and that the roadside was soft and

18

muddy. But while the drivers testified to these conditions after the fact, they did not testify that the conditions were open and obvious before, or at the time of, Shelton's accident. Nor do photographs of the scene conclusively establish that any such conditions were open and obvious. Indeed, some of the accident scene photographs show that the road edge where Shelton's tires sank, causing the rollover, was graveled and gave the appearance of a solid shoulder.

Finally, we find unpersuasive Mortenson's argument that Shelton was aware of the dangerous condition of Bell Road because he had driven the road multiple times before the accident. While Shelton may well have noticed that the road narrowed at the culvert, there is no evidence that he had encountered or was aware of any of the dangers presented by the conditions of the road edge on any of his previous trips.

We conclude that Mortenson did not conclusively establish that the danger presented by the combination of the narrow roadway and the condition of the road edge was open and obvious or was actually known to Shelton. Mortenson therefore has not demonstrated that it had no duty to warn against that danger. The question, then, is whether it satisfied that duty.

### 5. Failure to warn

"If the evidence conclusively establishes that the property owner adequately warned the injured party of the condition, then the property owner was not negligent as a matter of law." *Henkel v. Norman*, 441 S.W.3d 249, 252 (Tex. 2014). But to be adequate, "the warning must notify of the particular condition." *Id.* For example, a

19

speed limit sign does not adequately warn of a pothole. *Id.* (citing *TXI Operations, L.P. v. Perry*, 278 S.W.3d 763, 765 (Tex. 2009)). In addition, "[a] court may decide [an] issue[] as a matter of law only if the underlying facts are undisputed or, in light of all the evidence, reasonable minds cannot differ." *Crosstex*, 505 S.W.3d at 609 (internal quotation marks omitted).

Mortenson argues that the evidence in this case conclusively established that it had adequately warned against the dangerous condition of Bell Road. But Mortenson's argument centers on evidence that it had warned the truck drivers, including Shelton, that Bell Road narrowed in the culvert area. The evidence does not, however, show that Mortenson had given any warning concerning the additional conditions that created an unreasonable risk of harm—the soft condition of the road edge, the lack of shoulders sufficient to support the weight of a truck, or the inadequacy of the slope to alleviate the danger of a rollover. Consequently, the evidence does not conclusively prove that Mortenson had adequately warned against the danger that created an unreasonable risk of harm to Shelton. *See Henkel*, 441 S.W.3d at 252.

### 6. Failure to make safe

A premises owner or occupier can satisfy its duty to an invitee "by eliminating the dangerous condition or by mitigating the condition so that it is no longer unreasonably dangerous." *Austin*, 465 S.W.3d at 202. Mortenson contends that the evidence conclusively proved that it had eliminated any unreasonable danger by

imposing a 15 mile-per-hour speed limit and a right-of-way rule and by creating a pull-out area to facilitate that right-of-way rule.

While the evidence demonstrates that Mortenson implemented measures that, if followed, would have lessened the risk presented by the narrow portion of Bell Road, the issue before the jury was whether those measures were sufficient to make the condition of the road reasonably safe. *See id.* (describing the standard as making the condition no longer unreasonably dangerous). In making this determination, the jury was entitled to consider the dangers presented by the road conditions discussed above in addition to the narrowness of the road.

The jury was also entitled to consider Mortenson's own assessment of the dangerous condition of the road. Mortenson recognized that the road in the culvert area was unsafe and presented a "clear and present danger" that could have been reduced by widening the road. It also acknowledged that it could have obtained a permit to widen the road at the culvert to make it safe and that nothing from the county or the engineer's diagram prevented it from doing so.[6] Even so, Mortenson made a conscious and intentional decision not to widen the road in that area.

---

[6]Mortenson cites testimony by its corporate representative that an unidentified county commissioner prohibited Mortenson from touching the culvert area because the culvert had only recently been installed. Shelton objected that this defensive theory had not been previously disclosed and asked that the testimony be stricken. The trial court declined to strike the testimony or instruct the jury to disregard it but agreed that it would sustain hearsay objections to such testimony going forward. The parties then agreed on the record that Mortenson would not use the alleged prohibition as a defensive theory. *See* Tex. R. Civ. P. 11. We therefore decline to

21

In addition, while Mortenson provided a safe pull-out area for unloaded trucks to yield the right-of-way, it did not provide any safe means for a loaded truck coming in the opposite direction to pull over if necessary. On the contrary, the road-edge conditions, including a lack of adequate shoulders and slope, were such that any attempt by a loaded truck to pull over would meet with a significant risk of the truck's overturning. Mortenson took no action to correct or ameliorate those dangerous road-edge conditions.

We cannot conclude on this record that reasonable minds could not differ concerning whether Mortenson's speed and right-of-way rules were sufficient to make Bell Road reasonably safe. *See Crosstex*, 505 S.W.3d at 609. As a result, we cannot conclude that the evidence conclusively established that Mortenson mitigated the condition of the road so that it was no longer unreasonably dangerous. *See id.*; *Austin*, 465 S.W.3d at 202.

### 7. Proximate cause

Mortenson next contends that there is no evidence that its negligence proximately caused Shelton's injury. Rather, it argues that the evidence conclusively proved that such injury was proximately caused by the negligence of Mancil, North, and L.O. Transport. But it is well settled that there may be more than one proximate cause of an injury. *See Bustamante v. Ponte*, 529 S.W.3d 447, 457 (Tex. 2017). The fact

consider any defensive theory founded on the assertion that Mortenson was prohibited by the county from widening the road at the culvert.

22

that the record establishes Mancil's, North's, and L.O. Transport's liability does not mean that it cannot also support Mortenson's.

Proximate cause consists of two factors—cause in fact and foreseeability. *LMB, Ltd. v. Moreno*, 201 S.W.3d 686, 688 (Tex. 2006); *see Marathon*, 106 S.W.3d at 727. Mortenson contests only the cause-in-fact element.

"The test for cause-in-fact, or 'but-for' causation, is whether (1) the act or omission was a substantial factor in causing the injury and (2) without the act or omission the harm would not have occurred." *Moreno*, 201 S.W.3d at 688. There is no cause in fact if a defendant's conduct merely furnished a condition that made the plaintiff's injuries possible. *W. Invs., Inc. v. Urena*, 162 S.W.3d 547, 551 (Tex. 2005).

Mortenson relies heavily on *Peterson v. RES America Construction, Inc.*, No. 13-10-00238-CV, 2011 WL 2582560 (Tex. App.—Corpus Christi–Edinburg June 30, 2011, no pet.) (mem. op.), to support its argument that it merely furnished a condition that made Shelton's injury possible. The defendant in *Peterson*, RES, was a general contractor overseeing construction at a windfarm. *Id.* at *1. Peterson's employer, DNV, contracted with RES to build meteorological towers on the site. *Id.* Ionos subcontracted with DNV to determine placement of the towers. *Id.* at *2.

RES supervised the construction of a road to access the worksite. *Id.* That road, however, was narrow and insufficient to support the weight of the crane transporting a tower to the site. *Id.* Ionos recognized that the road was not viable, and so instead of transporting the tower to its intended site, Ionos set the tower aside

23

in an area of soft sand. *Id.* When Peterson later climbed the tower in the course of performing his job with DNV, it fell and killed him. *Id.* at *1.

The plaintiffs offered the following causation theory in their attempt to hold RES liable for Peterson's death:

> [T]he condition of the road was so poor, and its dimensions so narrow, that it was insufficient to support the weight of the crane that was to be used for constructing the [meteorological] towers, and the [meteorological] towers therefore had to be staged in a soft, grassy area, which led to Peterson's fall.

*Id.* at *7. The court of appeals rejected this theory, holding instead that "RES's conduct in building the road merely furnished the condition that made Peterson's injury possible, which is insufficient to establish legal cause." *Id.*

*Peterson*, like the case before us, involved a narrow, soft road on a windmill project construction site, but that is where any similarity ends. The condition of the road in *Peterson* was at least a step removed from the actual cause of the accident, which was placing the tower on ground too soft to support it. *See id.* Here, the condition of the road was the actual physical cause of Shelton's rollover—the road was too narrow to permit two trucks to pass one another, the edge of the road was too soft to support the weight of Shelton's truck when he used it to try to avoid an oncoming truck,[7] and the slope was inadequate to allow Shelton to return to the roadway without the truck's overturning.

---

[7]Mortenson does not contest the jury's finding that Shelton was not at fault for the accident.

Mortenson argues that there is no evidence that it committed any negligent act on the day of Shelton's accident or "played any part in the actual events giving rise to the accident." It again emphasizes Mancil's and North's negligence in speeding and in failing to yield the right-of-way, and L.O. Transport's negligence in releasing Mancil's and North's trucks onto the road when Shelton was already coming in the opposite direction. But again, the part these parties played in causing the accident—which the jury recognized and accounted for—does not preclude a finding that Mortenson's own negligence was a proximate cause of the accident. *See Bustamante*, 529 S.W.3d at 457.

In addition, Mortenson's argument is essentially that there is no evidence that it engaged in a contemporaneous negligent activity that proximately caused Shelton's accident. "[N]egligent activity encompasses a malfeasance theory based on affirmative, contemporaneous conduct by the owner that caused the injury, while premises liability encompasses a nonfeasance theory based on the owner's failure to take measures to make the property safe." *Del Lago Partners, Inc. v. Smith*, 307 S.W.3d 762, 776 (Tex. 2010) (footnote omitted). Only the latter theory is at issue here; thus, whether Mortenson engaged in any contemporaneous activity that proximately caused Shelton's injury is of no consequence. *See Levine*, 537 S.W.3d at 471 (noting that negligence and premises liability theories are not interchangeable).

Mortenson's failure to exercise reasonable care to make Bell Road reasonably safe did not merely furnish a condition that made Shelton's injury possible. *See Austin*,

25

465 S.W.3d at 202 (recognizing duty to make premises reasonably safe for invitee); *cf.* *Urena*, 162 S.W.3d at 551 (holding that merely furnishing condition making injury possible is not cause in fact). On the contrary, there is evidence that Shelton's truck would not have overturned if Mortenson had widened the road, built shoulders adequate to support the weight of the truck, or provided proper slopes. The jury could reasonably have concluded from this evidence that Mortenson's failure to provide any of these remedial measures—its failure to make the road reasonably safe—was a substantial factor in causing Shelton's injury, without which that injury would not have occurred. *See Moreno*, 201 S.W.3d at 688. In other words, the evidence is legally sufficient to support the jury's implicit finding of proximate cause.

### 8. Factual sufficiency

Mortenson urges that the evidence is factually insufficient to support the jury's premises liability finding because Mortenson did not undertake any duty "to widen Bell Road adequately or change and slope the shoulders." But this contention relates only to Shelton's negligent undertaking claim. In fact, the entirety of Mortenson's factual sufficiency argument on this point is a reference to the portion of its brief discussing that claim.

Mortenson's premises liability duty to warn against or to make safe the dangerous condition of Bell Road was imposed by law because Mortenson was the general contractor in control of the premises. *See Olivo*, 952 S.W.2d at 527. Whether

26

Mortenson "undertook" those duties does not render the evidence factually insufficient to support the jury's finding that Mortenson failed to satisfy them.

Mortenson next argues that the evidence of premises liability is factually insufficient because it is undisputed that Mortenson warned drivers about the condition of the road and instituted safety rules to prevent accidents. But the mere existence of a warning or of safety rules does not require a finding of no liability. It was the jury's task to determine, in light of all of the circumstances, whether Mortenson's warning was adequate and whether its safety rules made the condition of the road reasonably safe. *See Austin*, 465 S.W.3d at 202. Mortenson has not demonstrated that the jury's adverse findings on these matters was "so contrary to the overwhelming weight of all the evidence" that it should be set aside. *See Crosstex*, 505 S.W.3d at 615; *Campbell*, 585 S.W.3d at 572.

Mortenson's final factual sufficiency argument is that both expert and lay witnesses agreed that Mancil's, North's, and L.O. Transport's conduct led to the accident and thus caused Shelton's injury. But as previously noted, there may be more than one proximate cause of an injury. *See Bustamante*, 529 S.W.3d at 457. The jury's findings that Mancil, North, and L.O. Transport contributed to causing Shelton's injury do not preclude its further finding that Mortenson also contributed to causing that injury. Likewise, the evidence supporting the jury's findings against Mancil, North, and L.O. Transport does not render the evidence supporting its finding against Mortenson factually insufficient.

27

### 9. Conclusion on sufficiency of the evidence

We hold that the evidence is legally and factually sufficient to support the jury's implicit findings (1) that Mortenson both failed to adequately warn of the dangerous condition of Bell Road and failed to make that condition reasonably safe and (2) that those failures were a proximate cause of Shelton's injury. We overrule Mortenson's second issue.

## C. Proportionate Responsibility

The jury apportioned responsibility for Shelton's accident 75% to Mortenson, 10% to Mancil, 5% to North, and 10% to L.O. Transport. In its final issue, Mortenson challenges the sufficiency of the evidence to support that apportionment.

Juries are "given wide latitude in determining the negligent parties' proportionate responsibility." *Jackson v. Williams Bros. Constr. Co.*, 364 S.W.3d 317, 325 (Tex. App.—Houston [1st Dist.] 2011, pet. denied); *see Hagins v. E–Z Mart Stores, Inc.*, 128 S.W.3d 383, 392 (Tex. App.—Texarkana 2004, no pet.); *Rosell v. Cent. W. Motor Stages, Inc.*, 89 S.W.3d 643, 659–60 (Tex. App.—Dallas 2002, pet. denied). An appellate court may not substitute its judgment for that of the jury even if the evidence could support a different allocation of responsibility. *Jackson*, 364 S.W.3d at 325; *Rosell*, 89 S.W.3d at 659–60.

In arguing that the evidence does not support the jury's allocation of responsibility, Mortenson emphasizes testimony that Mancil's and North's excessive speed and failure to yield to Shelton caused the accident. But Mortenson ignores

evidence from which the jury may have concluded that it was partially to blame even for that conduct. For example, both Mancil and North indicated that they did not think the right-of-way rule applied in the area where the accident occurred because they believed that the road was wide enough to allow two trucks to pass safely. There is also evidence that Mortenson pressured truck drivers to hurry in such a way that encouraged them to speed and break safety rules.

The jury could reasonably have concluded that Mancil's and North's unsafe driving was at least partially attributable to Mortenson because it failed to adequately implement and communicate the right-of-way rule or because it fostered an atmosphere that encouraged unsafe driving. The record thus supports the jury's low allocation of responsibility to Mancil and North as compared to Mortenson.

A similar analysis applies to Mortenson's complaint regarding L.O. Transport's percentage of responsibility. Mortenson emphasizes testimony that the accident would not have occurred if L.O. Transport had not released Mancil's and North's trucks onto the road knowing that Shelton was already approaching in the opposite direction. But Mortenson does not address evidence that L.O. Transport had released Mancil's and North's empty trucks because it needed to make room for loaded trucks, presumably including the four trucks in Shelton's convoy. The jury could have inferred that L.O. Transport expected Mancil and North to comply with the right-of-way rule when they saw Shelton's truck approaching. This supports the jury's allocation of a low percentage of responsibility to L.O. Transport.

29

Concerning its own responsibility, Mortenson essentially reiterates its argument that the evidence does not support a finding of liability against it. We have determined above, though, that the evidence is legally and factually sufficient to support the jury's premises liability finding. That same evidence, including evidence that Mortenson was in control of the premises and had failed to adequately warn against or to make safe the specific physical conditions that resulted in Shelton's truck's overturning, is sufficient to support the jury's allocation of 75% responsibility to Mortenson. *See Jackson*, 364 S.W.3d at 325 (holding that evidence was factually sufficient to support apportionment because it was factually sufficient to support liability); *Rosell*, 89 S.W.3d at 660 (same).

We overrule Mortenson's third issue.

## IV. CONCLUSION

"When a jury finds liability based on alternative claims, we may affirm on any legally valid ground of recovery that affords complete relief." *Emerson*, 2021 WL 1432226, at *10. Although negligent undertaking is not a legally valid ground of recovery in this case, Shelton's alternative premises liability theory is legally valid and affords complete relief. Based on that alternative theory, we affirm the judgment of the trial court.

/s/ Bonnie Sudderth
Bonnie Sudderth
Chief Justice

Delivered: June 3, 2021

30