Opinion filed June 26, 2014



In The

# Eleventh Court of Appeals

_____

## No. 11-12-00129-CV
_____

## MICHELLE DIMMITT, Appellant

## V.

## BROOKSHIRE GROCERY COMPANY D/B/A BROOKSHIRE'S AND SUPERIOR SANITATION, INC., Appellees

**On Appeal from the 220th District Court**

**Comanche County, Texas**

**Trial Court Cause No. CCCV-10-14910**

## MEMORANDUM OPINION

Michelle Dimmitt filed suit against Brookshire Grocery Company d/b/a Brookshire's and Superior Sanitation, Inc., alleging a premises liability claim for personal injuries that she sustained when she slipped and fell in a Brookshire's grocery store. The trial court granted traditional summary judgments in favor of both defendants and ordered that Dimmitt take nothing. Dimmitt challenges the

trial court's grant of summary judgment as to each defendant. We reverse and remand.

The summary judgment evidence shows that Brookshire owned and operated a grocery store in Comanche. On the night giving rise to the circumstances of this case, Dimmitt entered the Brookshire's store at around 9:30 p.m. She saw a cone that contained a "wet floor" warning. She also saw a person a few aisles over who was pushing a floor scrubber and was using it to clean the floor. The floor scrubber dispensed the correct amount of water until it turned the corners leading to the next aisle. Something was wrong with the floor scrubber, and it had a history of leaking excess water on the floor as it turned the corners at the end of the aisles.

Brookshire had contracted in writing with Superior to regularly scrub the floors in the Comanche store. The floor scrubber belonged to Superior but was kept at the Brookshire's store. Occasionally, Brookshire's employees used the scrubber and always had some other employee follow behind it with a mop to remove the excess water left on the floor as the scrubber was turned around the ends of the aisles. On this particular occasion, however, the summary judgment evidence shows that Superior employees were conducting the scrubbing operation.

According to the summary judgment evidence, Dimmitt initially was able to walk safely through the store but fell when she encountered one of the puddles of excess water that had been left by the scrubber. After Dimmitt fell, the store's grocery manager, David McLearen, ordered that the scrubbing process cease until the puddle of excess water was cleaned up. McLearen, as well as another Brookshire employee, offered summary judgment evidence that the puddle was the result of excess water left by the scrubbing machine.

Subsequently, Dimmitt sued Brookshire and claimed that she had injured her knee in the fall and that, among other things, the injury resulted in her having a

knee operation. After it was sued, Brookshire filed a third-party action against Superior, in which it sought to attribute the liability for Dimmitt's fall to Superior. Dimmitt amended her petition to include Superior as a Defendant. In her amended petition, Dimmitt alleged that an employee of Superior created a hazardous puddle while operating a floor scrubber, that the puddle was a premises defect, and that the defendants knew about and failed to warn Dimmitt of the condition.

Brookshire later nonsuited its third-party claim against Superior. Superior and Brookshire each subsequently filed a motion for summary judgment. Each of the motions contained traditional as well as no-evidence grounds. Each party argued that it provided adequate notice that the floor was wet. Brookshire also argued that it owed no duty to Dimmitt and that it was not liable for the activities of Superior, an independent contractor. Superior did not contest the assertion that it owed a premises defect duty to Dimmitt. The trial court granted both parties' traditional motions for summary judgment and ordered that Dimmitt take nothing. In its written orders, the trial court did not state the grounds upon which it based its rulings. Because the trial court granted the defendants' traditional motions for summary judgment and because it neither granted nor denied the no-evidence motions, we do not address the arguments in the briefs that relate to the no-evidence motions.

Superior does not dispute that it owed Dimmitt the duty that is due to a licensee. The only issue involving Superior is the adequacy of the warning given by Superior in the discharge of that duty. However, before we address the issue of the adequacy of the warning, we will first address whether Brookshire also owed that duty to Dimmitt.

Brookshire argued in its motion for summary judgment that it was not liable for injuries resulting from a condition created by an independent contractor over which it exerted no control. Dimmitt contended that, regardless of who created the

3

condition, Brookshire owed a duty to eliminate or warn its customers of dangerous conditions of which it was aware.

The elements of a negligence cause of action are a duty, a breach of that duty, and damages proximately caused by the breach of that duty. *Doe v. Boys Clubs of Greater Dallas, Inc.*, 907 S.W.2d 472, 477 (Tex. 1995). Therefore, to establish tort liability, the plaintiff, including, as here, an injured invitee, must prove the existence and violation of a legal duty owed to him by the defendant owner. *Abalos v. Oil Dev. Co. of Tex.*, 544 S.W.2d 627, 631 (Tex. 1976). The existence of a legal duty is a question of law. *TXI Operations, L.P. v. Perry*, 278 S.W.3d 763, 765 (Tex. 2009). The extent of the duty owed by an occupier of land depends on the legal status of the visitor. *Motel 6 G.P., Inc. v. Lopez*, 929 S.W.2d 1, 3 (Tex. 1996). An owner or occupier of land generally has a duty to invitees to use reasonable care to make and keep the premises safe. *Redinger v. Living, Inc.*, 689 S.W.2d 415, 417 (Tex. 1985). That "duty is to exercise reasonable care to protect against danger from a condition on the land that creates an unreasonable risk of harm of which the owner or occupier knew or by the exercise of reasonable care would discover." *CMH Homes, Inc. v. Daenen*, 15 S.W.3d 97, 101 (Tex. 2000) (citing *Corbin v. Safeway Stores, Inc.*, 648 S.W.2d 292, 295 (Tex. 1983)).

The legal status of the parties here is not in dispute. The record demonstrates that Brookshire owned and operated a grocery store on the premises, that it hired Superior as an independent contractor to clean the floors in its store, and that Dimmitt—as a customer of the grocery store—was an invitee.

Generally speaking, an owner/occupier does not have a duty to see to it that an independent contractor performs its work in a safe manner. *Redinger*, 689 S.W.2d at 418. However, an owner/occupier may be liable when it exercises control over the work of the independent contractor. *Id.* That right of control must be more than merely a general right to direct that the work start or stop, to conduct

4

an inspection of the premises, or to receive reports. *Id.* But an "owner/occupier cannot turn a blind eye to hazardous conditions created by the independent contractor when it (the owner/occupier) retains control of the property and continues to welcome invitees (who did not create or work for one who created the condition) onto its premises." *Koko Motel, Inc. v. Mayo*, 91 S.W.3d 41, 47 (Tex. App.—Amarillo 2002, pet. denied).

Regardless of any question as to whether Brookshire controlled the work, it unquestionably retained control of the premises while the independent contractor cleaned its floors. The record shows that Brookshire continued to welcome customers into the store and that the customers were shopping in the area where work was being conducted. Thus, Brookshire was not entitled to summary judgment on the ground that the condition was created by an independent contractor because the record establishes as a matter of law that Brookshire had control of the premises.

Further, the summary judgment evidence conclusively shows that Brookshire at least should have known of the potentially hazardous activity pertaining to the creation of excess water puddles left by Superior's scrubbing activities. The summary judgment evidence shows that Brookshire had used Superior's leaking scrubber before, that it knew the scrubber leaked, and that it had assigned one of its own employees to follow behind the scrubber to mop up excess water. Under these circumstances, we cannot say, as a matter of law, that Brookshire did not owe a duty to Dimmitt to use reasonable care to make and keep the premises safe and to exercise reasonable care to protect against danger from a condition on Brookshire's property that created an unreasonable risk of harm of which Brookshire knew or, by the exercise of reasonable care, would discover. Insofar as Dimmitt's second issue addresses whether, as a matter of law, Brookshire owed her no duty, the issue is sustained.

We next address whether Brookshire and Superior discharged their respective duties by providing adequate notice of the dangerous condition as a matter of law. The elements of a premises liability claim when the injured party is an invitee are the following: (a) the owner/operator had actual or constructive knowledge of some condition on the premises; (b) the condition posed an unreasonable risk of harm; (c) the owner/operator did not exercise reasonable care to reduce or eliminate the risk; and (d) the owner/operator's failure to use such care proximately caused the plaintiff's injuries. *Corbin*, 648 S.W.2d at 296.

As discussed above, Brookshire owed a duty to warn or make the premises safe for invitees because it was in possession of the premises. Additionally, because Superior's employees created the condition, Superior owed a similar duty to warn of or make the dangerous condition safe for Brookshire's customers. *City of Denton v. Van Page*, 701 S.W.2d 831, 835 (Tex. 1986) ("[A] private person who has created the dangerous condition may be liable even though not in control of the premises at the time of injury."); *see also Strakos v. Gehring*, 360 S.W.2d 787, 795–96 (Tex. 1962) ("The law places a duty to warn of dangerous conditions . . . upon one who creates such conditions or who is in control of the area and permits such conditions to persist.").

As noted, in a premises liability claim, the plaintiff must show that the owner or occupier of land breached its duty "to exercise reasonable care to protect against danger from a condition on the land that creates an unreasonable risk of harm of which the owner or occupier knew or by the exercise of reasonable care would discover." *Scott & White Mem'l Hosp. v. Fair*, 310 S.W.3d 411, 412 (Tex. 2010) (quoting *CMH Homes*, 15 S.W.3d at 101). The duty is discharged, however, if the defendant made the condition reasonably safe or adequately warned the invitee of the dangerous condition. *Del Lago Partners, Inc. v. Smith*, 307 S.W.3d 762, 771 (Tex. 2010).

According to Superior, "Dimmitt acknowledged that the cleaning crew's presence in the store and the wet-floor sign meant that the floor could be wet," and it argues that this "was sufficient to discharge [its] obligation to warn her of a wet floor." Appellees argue that *Brooks v. PRH Investments, Inc.*, 303 S.W.3d 920 (Tex. App.—Texarkana 2010, no pet.); *Bill's Dollar Store, Inc. v. Bean*, 77 S.W.3d 367 (Tex. App.—Houston [14th Dist.] 2002, pet. denied); and *Tucker v. Cajun Operating Co.*, No. 11-07-00026-CV, 2008 WL 802985 (Tex. App.—Eastland 2008, no pet.) (mem. op.), support their positions. However, those cases are distinguishable in that there was no question that the conditions giving rise to the injury were the very conditions to which the warnings were directed. Here, Dimmitt contends that a puddle left by the broken scrubbing machine is a different condition than damp floors from normal scrubbing operations. She argues that a "wet floor" cone did not establish as a matter of law that the warning was adequate regarding the puddle that she encountered because "[g]eneral knowledge that a floor has been cleaned and a sign twenty feet away or more are not conclusively adequate warning of an unusually wet spot caused by defective equipment."

Resolving any doubts from the evidence in Dimmitt's favor, we assume that the nearest warning sign was a floor cone located at least twenty feet from where she fell. McLearen testified that, when the scrubber made 180-degree turns at the end of each aisle, a small strip of water leaked onto the floor. Dimmitt described the water as a "puddle." Elizabeth Ann Heflin, a Brookshire employee, testified that she had observed water "gushing" from the scrubber in the past and that there was "quite a bit of water on the floor" after Dimmitt fell. After hearing that someone slipped on the wet floor, McLearen found water on the floor and instructed the floor cleaners to stop cleaning the floors and mop up the water. McLearen agreed that there was "excess" water and testified that he instructed them to immediately mop up the water "[b]ecause someone could slip." Although

7

a reasonable inference to draw from this testimony might be that a "wet floor" cone constituted an adequate warning as to regular scrubbing activities, it does not establish that, as a matter of law, the cone, located twenty feet from the puddle where Dimmitt fell, adequately warned customers of the excess water condition that she encountered.

"Negligence is commonly a question of fact unless the evidence establishes a complete absence of negligence as a matter of law." *TXI Operations*, 278 S.W.3d at 765. While a general warning is some evidence of exercising reasonable care to eliminate the risk posed by a dangerous condition, it is not conclusive evidence of an adequate warning if it does not alert an invitee to the particular hazard. *See State v. McBride*, 601 S.W.2d 552, 556–57 (Tex. Civ. App.—Waco 1980, writ ref'd n.r.e.) (concluding a "SLOW" sign and a "35 MPH" sign were general instructions that did not warn driver "of the dangerous condition to which she was subjected, to wit, the slick and muddy condition where the accident occurred").

We agree with Dimmitt that the dangerous condition about which the defendants had a duty to warn was excess water left by a defective scrubber. Although the summary judgment record reveals some evidence that the defendants warned Dimmitt and other customers about the wet floor and that Dimmitt was aware that the floors were being scrubbed, the evidence does not conclusively show that a "wet floor" cone placed some twenty feet away from where she fell adequately warned her about excess water left by a defective scrubber. *See TXI Operations*, 278 S.W.3d at 765 (concluding warning was some but not conclusive evidence because "it neither informed the driver of road hazards generally, nor did it identify the particular hazard that TXI now says the sign was meant to warn against").

8

We note that we are not concluding that the wet floor signs were insufficient to warn Dimmitt of the dangerous condition; we simply cannot conclude that there was an adequate warning as a matter of law. Whether Brookshire and Superior adequately warned Dimmitt of the dangerous condition is a question of fact that should be resolved by the factfinder. It very well might be that the factfinder will find that the warning was sufficient both as to condition and proximity, but we are unable to make that determination as a matter of law. For all of the foregoing reasons, Superior and Brookshire were not entitled to summary judgment on the ground that they provided an adequate warning. Those portions of Dimmitt's first and second issues that pertain to whether Brookshire and Superior established, as a matter of law, the adequacy of the warnings are sustained.

Because Superior and Brookshire were not entitled to summary judgment on the grounds asserted in their traditional motions for summary judgment, we reverse the orders of the trial court in which it granted summary judgment in favor of Superior and Brookshire and dismissed Dimmitt's claims, and we remand the cause to the trial court for further proceedings consistent with this opinion.

JIM R. WRIGHT
CHIEF JUSTICE

June 26, 2014

Panel consists of: Wright, C.J.,
Willson, J., and Bailey, J.

9