

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

_____

No. 02-25-00333-CV

_____

PENNY MORGAN, Appellant

V.

BUC-EE'S, INC. AND BUC-EE'S LTD, Appellees

On Appeal from the 431st District Court
Denton County, Texas
Trial Court No. 23-5770-431

Before Sudderth, C.J.; Kerr and Wallach, JJ.
Memorandum Opinion by Justice Wallach

**MEMORANDUM OPINION**

In this slip-and-fall case, Appellant Penny Morgan appeals the summary judgment that the trial court rendered in favor of Appellees Buc-ee's, Inc. and Buc-ee's, Ltd. (collectively "Buc-ee's"). As Morgan puts it in her brief, this case "centers on whether the warning provided by the wet floor sign was adequate under Texas law to absolve Buc-ee's of liability for Morgan's fall." Because we conclude that Buc-ee's adequately warned Morgan about the wet floor, we affirm the summary judgment.

## I. Factual Background and Procedural History

In 2021, Morgan slipped on a wet floor inside a Buc-ee's store and broke her femur. In 2023, she sued Buc-ee's, asserting claims for both negligence and premises liability. In 2025, Buc-ee's filed a combined no-evidence and traditional motion for summary judgment (the MSJ), *see* Tex. R. Civ. P. 166a(a)–(b),[1] and Morgan timely filed a response, *see* Tex. R. Civ. P. 166a(d). After a hearing, the trial court granted the MSJ and rendered judgment that Morgan take nothing.

---

[1] Rule 166a was amended after the summary judgment hearing in this case. *See* Supreme Court of Tex., *Final Approval of Amendments to Rule 166a of the Texas Rules of Civil Procedure*, Misc. Docket No. 26-9012 (Feb. 27, 2026). Because the amendments to the rule make no difference in our analysis, we cite the current version of the rule in this opinion.

## II. Appeal

In her two issues, Morgan argues that the trial court erred in granting the MSJ because Buc-ee's did not show itself entitled to summary judgment on either no-evidence or traditional grounds. Although when both no-evidence and traditional summary judgment motions are granted, a no-evidence motion generally should be considered before the traditional motion is addressed, *B.C. v. Steak N Shake Operations*, 598 S.W.3d 256, 260–61 (Tex. 2020), here we will review the propriety of granting the traditional summary judgment first because it is dispositive of Morgan's appeal. *See Reynolds v. Murphy*, 188 S.W.3d 252, 258 (Tex. App.—Fort Worth 2006, pet. denied).

### A. Standard of Review

We review a summary judgment de novo. *Travelers Ins. v. Joachim*, 315 S.W.3d 860, 862 (Tex. 2010). We consider the evidence presented in the light most favorable to the nonmovant, crediting evidence favorable to the nonmovant if reasonable jurors could, and disregarding evidence contrary to the nonmovant unless reasonable jurors could not. *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009). We indulge every reasonable inference and resolve any doubts in the nonmovant's favor. *20801, Inc. v. Parker*, 249 S.W.3d 392, 399 (Tex. 2008). Once the defendant produces sufficient evidence to establish the right to summary judgment, the burden shifts to the plaintiff to come forward with competent controverting evidence that raises a fact issue. *Phan Son Van v. Peña*, 990 S.W.2d 751, 753 (Tex. 1999). A defendant that conclusively negates at least one essential element

3

of a plaintiff's cause of action is entitled to summary judgment on that claim. *Frost Nat'l Bank v. Fernandez*, 315 S.W.3d 494, 508 (Tex. 2010); *see* Tex. R. Civ. P. 166a(b), (c).

When, as here, a trial court's order granting summary judgment does not specify the ground or grounds relied on for its ruling, we will affirm the summary judgment if any of the theories presented to the trial court and preserved for appellate review are meritorious. *Provident Life & Accident Ins. v. Knott*, 128 S.W.3d 211, 216 (Tex. 2003); *Star-Telegram, Inc. v. Doe*, 915 S.W.2d 471, 473 (Tex. 1995). As an appellate court, we can consider only the material on file with the trial court when the summary judgment was granted. *Brookshire v. Longhorn Chevrolet Co.*, 788 S.W.2d 209, 213 (Tex. App.—Fort Worth 1990, no writ).

## B. Applicable Law on Premises Liability

In a premises liability action,[2] the duty an owner or occupier of property owes someone on the property depends on that person's status. *Catholic Diocese of El Paso v. Porter*, 622 S.W.3d 824, 829 (Tex. 2021). Here, the parties do not challenge

---

[2]Although Morgan's lawsuit against Buc-ee's alleged both negligence and premises liability causes of action, Buc-ee's argued in the MSJ that she had alleged only a premises liability claim. *See United Scaffolding, Inc. v. Levine*, 537 S.W.3d 463, 471–72 (Tex. 2017) (comparing and discussing differences between negligence and premises liability claims). Morgan does not challenge this contention on appeal. Accordingly, we limit our analysis to the propriety of the summary judgment on Morgan's premises liability claim. *See Carey v. Hi-Lo Auto Supply, LP*, No. 02-15-00345-CV, 2016 WL 3198872, at *2 (Tex. App.—Fort Worth June 9, 2016, no pet.) (mem. op.).

Morgan's status as an invitee.[3] The duty owed an invitee is to exercise reasonable care to protect against danger from a condition on the land that creates an unreasonable risk of harm of which the owner or occupier knew or by the exercise of reasonable care would discover. *Id.*

To prevail in a premises liability case, the invitee plaintiff must show that (1) the owner had actual or constructive knowledge of the condition at issue; (2) the condition was unreasonably dangerous; (3) the owner did not exercise reasonable care to reduce or eliminate the unreasonable risk of harm; and (4) the owner's failure to reduce or eliminate the unreasonable risk of harm proximately caused the plaintiff's injuries. *United Supermarkets, LLC v. McIntire*, 646 S.W.3d 800, 802 n.4 (Tex. 2022). As pertinent here, the third element is negated if the property owner either adequately warned the invitee about the condition or took reasonable actions designed to make it reasonably safe. *Henkel v. Norman*, 441 S.W.3d 249, 252 (Tex. 2014). Conclusive proof of an adequate warning entitles the property owner to summary judgment, absent proof of an exception to the adequate-warning requirement. *See id.*; *Reyes v. Brookshire Grocery Co.*, 578 S.W.3d 588, 593 (Tex. App.—Tyler 2019, no pet.); *see also Austin*, 465 S.W.3d at 204–08 (identifying two exceptions to general adequate-warning rule).

---

[3]"An invitee is one who enters the property of another with the owner's knowledge and for the mutual benefit of both." *Porter*, 622 S.W.3d at 829 (quoting *Austin v. Kroger Tex., L.P.*, 465 S.W.3d 193, 202 (Tex. 2015)).

To be adequate, a warning must be more than a general instruction such as "be careful"; the warning must notify of the particular condition. *Henkel*, 441 S.W.3d at 252 (quoting *TXI Operations, L.P. v. Perry*, 278 S.W.3d 763, 765 (Tex. 2009)). Warnings must be taken in context of the totality of the circumstances. *Id.*

## C. Analysis

Neither Morgan nor Buc-ee's disputes that, at the time Morgan slipped and fell, a bright yellow cone warning of a wet floor was placed on the floor near the spot where Morgan fell. The parties' evidence differs, however, over the distance of the cone from the wet spot. For the sake of clarity, we include in this opinion the following two pages from Morgan's response to the MSJ, featuring still-frame images from a Buc-ee's surveillance video:

6

At approximately 2:49 PM, Defendant's employee placed a slip-and-fall warning sign somewhere in the vicinity of the path taken by the cleaner. Exhibit D, Screenshot 2:49:55:534. The sign was a small yellow caution marker, *Id.*

Exhibit D —

Screenshot 2:49:55:534



From the video footage, it appears to be a 20-inch pop-up fabric cone, similar to this[1]:



---

[1] 20-inch pop-up safety cone; ULINE website; last accessed June 9, 2025.

7



7/8/2021 03:22:31.332 PM (CDT)

Deli Walkway 129.38

The parties do not contest that Morgan is the woman depicted lying on the floor in Exhibit G. Additionally, Morgan included in her response a transcript of her deposition, in which she testified that she "saw a warning sign . . . in the video" but did not "remember seeing it at the time" and that "it wasn't in the area [where she] fell. It was back behind it." When asked how far she thought the sign was from the area where she fell, Morgan testified, "I don't really know how to judge distance, especially in the video. But I, I would think it was probably more than 15 or 16 feet." She also submitted an unsworn declaration in which she stated, "The location of the

8

floor sign was approximately 10-15´ from the place that I slipped. The store was quite crowded that day[,] and I never saw a floor sign."

We must review this evidence in Morgan's favor. *See Henkel*, 441 S.W.3d at 252 n.2. However, we cannot ignore the fact that Morgan's Exhibit G shows her falling much closer to the yellow warning cone than what she estimated. Reasonable jurors could not disregard this evidence, nor could they disregard the other still frames from the time-stamped surveillance footage showing that (1) the yellow warning cone had been out on the floor more than half an hour before Morgan slipped and fell, (2) multiple other invitees in the crowded store were able to safely traverse the same area without falling, and (3) Morgan herself walked right past the warning cone multiple times[4] before slipping and falling.[5] *Cf. Golden Corral Corp. v. Trigg*, 443 S.W.3d 515, 518–20 (Tex. App.—Beaumont 2014, no pet.) (determining that evidence conclusively established that defendant restaurant discharged its duty by providing adequate warning that floor was wet where surveillance video established that tall, yellow sign was present in area when plaintiff fell; videos also showed

---

[4]The still-frame photograph marked Exhibit G above shows Morgan having fallen to the floor at 3:22:31 p.m. Other time-stamped stills in the summary judgment record show Morgan walking in the same area, past the cone, at 3:21:36 p.m., at 3:21:42 p.m., and again at 3:22:24 p.m. before her fall. The stills corroborate Morgan's account of a "crowded" store; several other individuals were standing or walking in close proximity to Morgan and the cone.

[5]Additionally, we note that Morgan testified in her deposition that if there had been a sign warning of a potential hazard, then she "would have walked around it" and "wouldn't have gone through it."

9

"significant number" of restaurant's customers walking in area near sign without incident during twenty-minute period before plaintiff fell; plaintiff testified that had she seen the sign, "[i]t would have warned [her] that there was a problem in the area where the cone was located"; and there was no reason to believe that plaintiff would have seen sign had it been placed exactly where she slipped).

Even taking Morgan's statements that she never saw the warning cone before she fell as true and indulging every reasonable inference therefrom does not create a fact issue on the reasonable-care element of her premises liability claim. Rather, the question is whether, "given the totality of the surrounding circumstances, the warning identifie[d] and communicate[d] the existence of the condition in a manner that a reasonable person would perceive and understand." *Henkel*, 441 S.W.3d at 253. In *Henkel*, for example, the supreme court held that a homeowner's "don't slip" statement to a mail carrier was adequate as a matter of law to warn him of an icy sidewalk. 441 S.W.3d at 250.

Morgan likens her case to *Jefferson Cnty. v. Akins*, 487 S.W.3d 216, 233 (Tex. App.—Beaumont 2016, pet. denied), and relies on that authority to support her contention that a fact issue existed as to the adequacy of the warning Buc-ee's provided. *Akins* was an appeal of a jury verdict in favor of a plaintiff who had slipped

10

and fallen in a hallway while working at the Jefferson County Jail.[6] *Id.* at 220. There was evidence that the only warning sign posted in the area was located on a mop bucket twenty feet from where the plaintiff entered the hall and fell. *Id.* at 231. There was no substantive description in the record regarding the size or color of the warning sign or the font used on the sign. *Id.* The only description in the record was that it was a "slippery floor" sign posted on a mop bucket. *Id.* Our sister court in Beaumont held that a reasonable jury "could conclude based on all of the circumstances surrounding [the plaintiff]'s fall that the warning sign posted approximately twenty feet from the wet floor where [the plaintiff] fell was inadequate to warn [the plaintiff] of the slippery condition on the floor when she entered the hallway." *Id.*

Morgan relies on *Akins* to contend that "a warning sign placed approximately twenty feet away, with scant evidence of visibility may be found inadequate by a jury, underscoring that proximity and context govern." While we agree to the extent that a warning sign's visibility, its proximity to the dangerous condition, and the context in which it is placed and displayed are important factors to consider in determining its adequacy, the mere fact that the warning sign in this case could have been placed closer to the wet spot where Morgan slipped and fell does not preclude a finding that

---

[6]In *Akins*, it was undisputed that the plaintiff was a licensee, *see* 487 S.W.3d at 225, not an invitee like Morgan. This does not affect our analysis because the duty owed to a licensee is less than that owed to an invitee. *Porter*, 622 S.W.3d at 829. Thus, Buc-ee's owed Morgan an even greater duty of care than Jefferson County owed Akins.

it was adequate as a matter of law. *See Gen. Motors Corp. v. Saenz*, 873 S.W.2d 353, 360 (Tex. 1993) ("Plaintiffs' argument that the warning could have been more prominent does not prove that it was not prominent enough. Every warning can always be made bigger, brighter[,] and more obvious."). Further, there are critical differences between the facts of this case and the facts in *Akins*.

Here, in contrast to *Akins*, the record contains specific details of what the warning sign looked like—including its size, color, and font—as well as photographic evidence that it was much closer to the spot where Morgan slipped and fell than the "slippery floor" sign was to the area where the plaintiff in *Akins* fell. Also, the *Akins* court said in its analysis that it was "reasonable that a licensee entering the hallway would not have seen the warning sign in time to react to the dangerous condition." *Akins*, 487 S.W.3d at 231. In Morgan's case, the record evidence undisputedly shows that the yellow warning cone had been placed on the floor over 30 minutes before Morgan slipped and fell and that Morgan had walked right past it shortly before falling.

We decline to make a blanket holding, as Buc-ee's urges, that "placing the yellow wet-floor warning sign adjacent to the spot where [a plaintiff falls] provide[s] adequate warning of a wet floor[] and is sufficient as a matter of law" to fulfill its duty to an invitee. Our decision today is based on and limited to the unique facts of this case. Applying the *Henkel* standard, we hold that the warning Buc-ee's provided in this case—a bright yellow wet-floor cone placed in visible proximity to the wet spot on

12

the floor—"was adequate in light of the totality of the circumstances to alert a reasonable person in [Morgan's] position" of the risky condition—a wet, slippery spot on the floor. *See Henkel*, 441 S.W.3d at 253.

The trial court correctly decided that Buc-ee's was entitled to judgment as a matter of law on Morgan's premises liability claim. We therefore overrule her second issue. Because we determine that Buc-ee's showed itself entitled to a traditional summary judgment on Morgan's premises liability claim, we need not address her first issue. *See* Tex. R. App. P. 47.1.

## III. Conclusion

Having overruled Morgan's second issue and not needing to address her first issue, we affirm the trial court's summary judgment. *See* Tex. R. App. P. 43.2(a).

/s/ Mike Wallach
Mike Wallach
Justice

Delivered:  May 28, 2026